2012 Ark. App. 650

**Freddie W. SAMMONS, Sr., and Patricia Gail Sammons, et al., Appellants**

v.

**SEECO, INC., Appellee.**

**No. CA 12–446.**

Court of Appeals of Arkansas.

Nov. 14, 2012.

Barham Law Office, P.A., by: R. Kevin Barham, for appellants.

John C. Riedel, Danville, for appellee.

ROBERT J. GLADWIN, Judge.

Appellee SEECO, Inc. ("SEECO"), was granted a directed verdict in a negligence case brought against it by appellants, Freddie and Gail Sammons and Paul and Alice Tygart, in Yell County Circuit Court. On appeal, appellants contend that the trial court erred in granting the directed verdict because they had established a prima facie case of negligence and res ipsa loquitur applied. We affirm.

## I. *Facts*

Appellants Freddie and Gail Sammons bought their house in 2005 for $60,000, under a contract of sale from Paul and Alice Tygart, who continue to hold legal title to the property. In 2007, on June 28 and July 5, appellants' yard flooded, leaving water standing around and under the house. In their negligence suit against SEECO, appellants alleged that the floods were caused by SEECO's pumping water out of their two "Olympic-sized" ponds connected to SEECO's gas drill located about 1500 yards to the northwest of appellants' house.

Freddie Sammons testified that the house had settled several inches into the ground and described cracked ceilings, cabinets separating from the walls, sinking floors, and warped doors. He claimed that he, his wife, and his brother-in-law who lives with them are experiencing sinus problems that they never had before the flooding, attributing the problems to black mold and mold spores, however, no doctor had given a diagnosis. He said that his nephew had no trouble getting under the house to fix: a pipe that had burst before the floods, but the house was sitting lower into the ground after the floods. Mr. Sam-

mons's nephew testified that there was no black mold or standing water under the house when he fixed the damaged pipe. He further testified that he had not seen standing water in appellants yard before the flooding described on June 28 and July 5, 2007.

Freddie Sammons testified that, after the flooding occurred, appellants remodeled a bathroom for $11,000. Gail testified that the bathroom was remodeled before the flooding. hey sought $75,000 in damages to level the house and repair the walls. This amount did not cover the black mold that they alleged had become prevalent since the flooding incidents. A realtor testified that the house was worth $65,000 when the Sammonses entered into the contract with the Tygarts, and that with the improvements made to the bathroom, it was worth more. Freddie Sammons testified that the property would be worth less today than before the flooding, and Gail Sammons said that the property was worth about $20,000 today, if that much.

Gail Sammons testified that she talked with a SEECO representative, stating,

> The first time I had an occasion after this second flood to have conversations with the folks associated with the drilling of the well up on the hill to the north of me. I talked to this man here. I don't remember his name. Been too long ago. I do recognize this gentleman's face. Oh, we had—I talked to him about the flooding. He had come—I had called him, and talked to him, and told him about the grass that we had sowed in the yard, and it was all in one spot. He came to the hospital [where I work] and talked to me, said that they would try to make it right. I did talk to him about the re-

lease of the water from up on the hill. He said he was pumping the well or the pond there is what he was doing.

At the end of appellants' case, SEECO moved for a directed verdict, arguing that there had been no evidence to connect SEECO to the damage on appellants property. Further, SEECO argued that there had been no evidence of negligence on its part and no evidence of where the flood waters originated. In granting SEECO's motion, the trial court stated,

Right. But as far as anybody seeing the ponds being pumped that caused this, the only thing that I see is there, to some extent, may be enough to show it came from there, is just that Ms. Sammons, the testimony at this point, given its most favorable light to the plaintiff, she testified she spoke to the gentleman seated beside you who said that he was pumping the pond is what caused the water to flow.

Now, that's the only nexus there is between the ponds and this water flow, but I see nothing as far as volume or anything else.

Mr. Barham, I—I can't—I can't see that I can take judicial notice that the mere drilling of an oil and gas well is an ultrahazardous activity in and of itself. I mean, you can show me some case law that says that, I'll reconsider, but I just don't see that based on the testimony I've heard that it—it is that type of activity.

. . . .

There was nothing as far as volume of the water that came other than there was a lot of water, and it was several inches deep. Again, there's no—I think it gets to speculation to say that the causation for the settling and this amount of water is enough to survive directed verdict either.

I've got a suspicion of that, but I don't think it rises to a level that I can make that assumption at this point. I'm going to grant the motion for directed verdict.

Appellants filed a notice of appeal, and this appeal followed.[1]

## ₄II   Standard of Review

In *Rymor Builders, Inc. v. Tanglewood Plumbing Co.*, 100 Ark.App. 141, 144–45, 265 S.W.3d 151, 153 (2007), this court explained our standard of review as follows.

The bench and bar often refer to a "directed verdict" during a non-jury case. This is a misnomer. Because no jury is in the box, no verdict will be given. The proper motion to challenge the sufficiency of an opponent's evidence in a non-jury case is a motion to dismiss. Ark. R. Civ. P. 50(a).

But there is truth in this common misnomer because the circuit court must use the same legal standard in evaluating a motion to dismiss as it would in evaluating a motion for a directed verdict. The court must decide "whether, if it were a jury trial, the evidence would be sufficient to present to the jury." *Woodall v. Chuck Dory Auto Sales, Inc.*, 347 Ark. 260, 264, 61 S.W.3d 835, 838 (2001). If the non-moving party has made a prima facie case on its claim or counter-claim, then the issue must be resolved by the finder of fact. *Swink v. Giffin*, 333 Ark. 400, 402, 970 S.W.2d

1.  The judgment in favor of SEECO filed by the trial court on September 7, 2010, did not include plaintiffs Paul and Alice Tygart, and the resulting appeal was dismissed by this court for lack of jurisdiction. *See Sammons v. Seeco, Inc.*, 2011 Ark. App. 436, 2011 WL 2394459. The trial court issued a judgment in favor of SEECO on February 7, 2012, which was amended on March 5, 2012, that included the Tygarts, and it is from the amended judgment that appellants appeal.

207, 208 (1998). In evaluating whether the evidence is substantial enough to make a question for the fact-finder, however, the circuit court may not assess the witnesses' credibility. *First United Bank v. Phase II,* 347 Ark. 879, 902, 69 S.W.3d 33, 49 (2002); *Swink,* 333 Ark. at 403, 970 S.W.2d at 209.

### III. *Negligence*

■ In order to establish a prima facie case of negligence, appellants had to show that they sustained damages, that SEECO was negligent, and that such negligence was a proximate cause of their damages. *See, e.g., Mangrum v. Pigue,* 359 Ark. 373, 198 S.W.3d 496 (2004). Negligence is the failure to do something that a reasonably careful person would do, or the doing of something that a reasonably careful person would not do. *Id.; City of Caddo Valley v. George,* 340 Ark. 203, 9 S.W.3d 481 (2000). Proximate cause means a cause, which, in a natural and continuous sequence, produces damage and without which the damage would not have occurred. *Mangrum, supra.*

■ A plaintiff cannot rely on inference based on conjecture to establish a claim of negligence, and the mere fact that an accident occurred is not evidence of negligence. *See Nichols v. Int'l Paper Co.,* 278 Ark. 226, 644 S.W.2d 583 (1983). In other words, negligence is not imposed in the absence of proof. *See Bess v. Herrin,* 309 Ark. 555, 831 S.W.2d 907 (1992). Moreover, conjecture and speculation, however plausible, cannot be permitted to supply the place of proof. *Mangrum, supra.* The fact that an accident occurred with nothing more is not evidence of negligence on the part of anyone. *Nichols, supra.*

■ Appellants contend that the trial court erred in granting SEECO's dismissal motion. First, they argue that they established a prima facie case for damages based on Mr. Sammons's testimony regarding the amount paid for the home, the amount paid for remodeling, and the value of the home both before and after the flood. This point is conceded by SEECO.

Second, appellants contend that SEECO was negligent by violating a duty owed to them as an adjacent landowner. They cite *Dye v. Burdick,* 262 Ark. 124, 132, 553 S.W.2d 833, 836 (1977), which quotes 2 C.J.S. Adjoining Landowners § 44, Footnote 82:

> One who collects and keeps water on his premises, which is likely to do mischief if not properly controlled, is liable for his negligence, either in the original construction of his reservoir or receptacle, in subsequently allowing it to become defective, or in failing properly to guard against all such contingent damages as might reasonably be anticipated.

Appellants claim that they presented a prima facie case for ordinary negligence and the trial court erred in granting the dismissal. They contend that SEECO admitted that it operated a gas well located in the section just north of appellants property. Further, appellants contend that a SEECO agent admitted to Gail Sammons that it had caused the flooding around and under her home. Based on all the evidence presented, appellants argue that there is no question that SEECO breached its duty to them.

Third, appellants claim that their damages were caused by SEECO's negligence. They maintain that the evidence shows that the damage to the house occurred after the flooding. They admit that they have submitted no scientific data or evidence linking the settling of the home and sinking of its supports to the flooding that occurred, but they contend that it was the trial court's obligation to accept the testi-

mony that was produced by them and the natural inferences arising from it, citing *Abernathy v. Knych*, 76 Ark.App. 127, 61 S.W.3d 207 (2001), where we reversed a directed verdict, holding that a jury question had been presented to the trial court.

SEECO contends that the trial court did not err in granting the dismissal. SEECO maintains that appellants failed to present sufficient evidence that SEECO breached any duty owed to them or that the damages were proximately caused by any negligence of SEECO. SEECO admits that as an adjacent landowner, it owed a duty of reasonable care to appellants under *Dye, supra.* However, SEECO claims that there is no circumstantial or direct evidence of any breach of this duty found in the record.

It asserts that the conversation Gail Sammons had with SEECO's agent does not amount to any evidence. Even though argued by appellants, SEECO points out that there is no admission by a SEECO agent that SEECO caused the flooding. SEECO further asserts that there was no evidence presented of volume of water or when the pumping was done. Thus, SEECO maintains that there was no evidence that the water in the yard or under the house came from any pond operated by SEECO, or that SEECO released the water that caused the damages.

Further, SEECO claims that there was no evidence that it proximately caused any damages. SEECO cites *Mangrum, supra,* where the Arkansas Supreme Court held that a damaged crop is not in and of itself evidence of negligence. There, appellant failed to produce any evidence of malfeasance on the part of appellees. *Id.* Our supreme court held that conjecture and speculation cannot be permitted to supply the place of proof. *Id.* SEECO contends that there was no evidence that it pumped the water that appellants saw in their yard or of the amount that was pumped from SEECO's pond. The only evidence was that after the second episode, an agent of SEECO's stated that it did pump water. This is not substantial evidence.

A mere fact that an accident occurred is not evidence of negligence. *Schubert v. Target Stores, Inc.*, 2010 Ark. 466, 369 S.W.3d 717. Appellants failed to show that SEECO actually released the water that flooded their yard. Further, appellants failed to prove that, if SEECO did release the water, the water was what caused the damages to appellant's house. Accordingly, the trial court's dismissal was not error.

## IV. *Res Ipsa Loquitur*

This court explained the doctrine of res ipsa loquitur in *Johnson v. M.S. Development Co.*, 2011 Ark. App. 542, at 4–5, 386 S.W.3d 46, 48–49, as follows:

> The doctrine of res ipsa loquitur was developed to assist in the proof of negligence where the cause is connected with an instrumentality in the exclusive control of a defendant. *Schubert v. Target Stores, Inc.*, 2010 Ark. 466, at 6, 369 S.W.3d 717, 720. It applies where the evidence of the true cause is available to the defendant but not to the plaintiff. *Id.* The doctrine, when applicable, allows the jury to infer negligence from the plaintiff's evidence of circumstances surrounding the occurrence. *Id.*
>
> In the words of Mr. Justice Holmes, res ipsa loquitur is "merely a short way of saying that, so far as the court can see, the jury, from their experience as men of the world, may be warranted in thinking that an accident of this particular Rind commonly does not happen except in consequence of negligence, and that therefore there is a presumption of fact, in the absence of explanation or other evidence which

the jury believe, that it happened in consequence of negligence in this case." (Citation omitted). This is the kind of inference that jurors commonly are allowed to make from circumstantial evidence, the only difference being that, when res ipsa loquitur applies, the circumstantial evidence from which the inference is drawn is the fact of the injury itself, plus the few obvious facts which surround the injury but do not clearly explain how it happened.

*Marx v. Huron Little Rock,* 88 Ark.App. 284, 292, 198 S.W.3d 127, 133 (2004) (*citing Coca–Cola Bottling Co. v. Hicks,* 215 Ark. 803, 807, 223 S.W.2d 762, 764–65 (1949)).

To invoke the doctrine of res ipsa loquitur, a plaintiff must show that (1) the defendant owes a duty to the plaintiff to use due care; (2) the accident is caused by the thing or instrumentality under the control of the defendant, (3) the accident which caused the injury is one that, in the ordinary course of things would not occur if those having control and management of the instrumentality used proper care, and (4) there is an absence of evidence to the contrary. *Schubert,* at 6–7, 369 S.W.3d at 720–21. Our supreme court has stated, "To make certain that the injury has not been caused by somebody else, through some intervening negligence, it is ordinarily required that the instrumentality causing injury have been in defendant's exclusive possession and control up to the time of the plaintiff's injury." *Barker v. Clark,* 343 Ark. 8, 14, 33 S.W.3d 476, 480 (2000). *See also* AMI Civ. 609 (stating that exclusive control of the instrumentality by the defendant is a required element of res ispa loquitur).

Appellants claim that the trial court erred in failing to apply res ipsa loquitur.

They cite *Dye, supra,* where the doctrine of res ipsa loquitur applied in a suit for damage that occurred when a dam broke after heavy rain. In *Dye,* the evidence showed that the dam was under the exclusive control of the owners of the land on which it was located, it was reasonable to say that the dam would not have broken in the ordinary course of things if those in control had used ordinary care, and there was no evidence that any act or negligence of the downstream landowners constituted proximate cause of their injury. *Dye,* 262 Ark. at 139–40, 553 S.W.2d at 839–40.

Appellants contend here that SEECO operated the well. As the operator, SEECO maintained two ponds at its drilling site on a ridge above appellants' house. Appellants maintain that SEECO pumped the water from the ponds on two successive occasions, thereby flooding water under appellants' house. Appellants argue that there is no question that SEECO had these ponds under its exclusive dominion and control and was responsible under res ipsa loquitur for the damage caused by the sudden release of water on two successive occasions.

SEECO contends that res ipsa loquitur does not apply because the doctrine will not be applied when all other responsible causes, such as the conduct of the plaintiff or third persons, are not sufficiently eliminated. *Barker v. Clark,* 343 Ark. 8, 33 S.W.3d 476 (2000). Exclusive control is an essential element. *Id.* SEECO maintains, and we agree, that there was no evidence here that the ponds were under the exclusive control of SEECO.

Affirmed.

GRUBER and GLOVER, JJ., agree.