Cite as 2020 Ark. App. 234

# ARKANSAS COURT OF APPEALS

DIVISION II

**No.** CV-19-451

| | | |
|---|---|---|
| BRIAN ESCUE | | **Opinion Delivered:** April 15, 2020 |
| | APPELLANT | APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, WESTERN DISTRICT |
| V. | | [NO. 16CV-16-357] |
| RICELAND FOODS, INC. | | HONORABLE RICHARD LUSBY, JUDGE |
| | APPELLEE | AFFIRMED |

**MEREDITH B. SWITZER, Judge**

Brian Escue appeals the Craighead County Circuit Court's grant of summary judgment to appellee Riceland Foods, Inc. (Riceland). We affirm.

## I. *Facts*

On December 11, 2015, Escue, a truck driver for Lockhart Trucking, was the first in line to pick up a load of defatted rice bran from Riceland's Stuttgart facility. After his truck was loaded, he moved it to the scales to be weighed and exited his truck to lock and seal the load. After exiting his truck, Escue slipped and fell, breaking his right ankle.[1]

Escue sued Riceland on the theory of premises liability, arguing Riceland's negligence was the cause of his injury. He alleged that he was a business invitee, and as

---

[1]Triangle Insurance Company, the workers'-compensation insurer paying Escue workers'-compensation benefits for his injury, was allowed to intervene in this action to preserve its right to recover sums paid to Escue in relation to his injury.

such, Riceland owed him a duty to use ordinary care to maintain its premises in a reasonably safe condition; that the presence of rice bran (a byproduct of rice processing) on Riceland's premises was the result of Riceland's failure to use ordinary care; that Riceland knew of the presence of rice bran on the premises or the rice bran had been on the premises for such a length of time that Riceland knew or should have reasonably known of its presence; that Riceland failed to use ordinary care to remove the rice bran and failed to maintain the walkway in and around the scales by failing to sweep, wash, or otherwise clean the substance off the surface to make it less slick; and that Riceland failed to warn him of the danger of slipping and falling when rice bran accumulates on the walkway.

Riceland answered Escue's complaint denying it was negligent. Riceland then filed a motion for summary judgment. After a hearing, the circuit court granted Riceland's motion for summary judgment. Escue filed a timely notice of appeal.

## II. *Standard of Review*

It is well settled that summary judgment should be granted only when it is clear there are no issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Farm Bureau Mutual Ins. Co. of Ark., Inc. v. Hopkins*, 2018 Ark. App. 174, 545 S.W.3d 257. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id*. On appeal, viewing the evidence in the light most favorable to the nonmoving party and resolving all doubts and inferences against the moving party, we determine if summary judgment was appropriate by assessing whether the moving party's evidence in support of its motion leaves a material question of fact unanswered. *Holman v.*

2

*Flores*, 2018 Ark. App. 298, 551 S.W.3d 1.  Our appellate review is not limited to the pleadings, as we also focus on affidavits and other documents filed by the parties.  *Id.*

The mere fact that an accident occurred is not evidence of negligence.  *Sammons v. SEECO, Inc.*, 2012 Ark. App. 650, 425 S.W.3d 38.  Negligence is not imposed in the absence of proof, and conjecture and speculation, however plausible, cannot be permitted to supply the place of proof.  *Id.*  To prevail on a claim of negligence, the plaintiff must prove that the defendant owed a duty to the plaintiff, that the defendant breached the duty, and that the breach was the proximate cause of the plaintiff's injuries.  *Shook v. Love's Travel Stops & Country Stores, Inc.*, 2017 Ark. App. 666, 536 S.W.3d 635.  Because the question of what duty is owed is one of law, we review it de novo.  *Id.*  If the court finds that no duty of care is owed, the negligence count is decided as a matter of law.  *Id.*

A business invitee visits "for a purpose connected with the business dealings of the owner."  *Young v. Paxton*, 316 Ark. 655, 660, 873 S.W.2d 546, 549 (1994).  Escue was a business invitee, as he was on Riceland's premises to haul a load of Riceland's product.  As the court explained in *Hope Medical Park Hospital v. Varner*, 2019 Ark. App. 82, at 5–6, 568 S.W.3d 818, 822 (citations omitted):

> A property owner has a duty to exercise ordinary care to maintain his or her premises in a reasonably safe condition for the benefit of his or her invitees.  The property owner is liable if he or she has superior knowledge of an unreasonable risk of harm of which the invitee, in the exercise of ordinary care, does not or should not know.  In Arkansas, a landowner generally does not owe a duty to a business invitee if a danger is known or obvious. The duty to warn an invitee of a dangerous condition applies only to defects or conditions that are in the nature of hidden dangers, traps, snares, pitfalls and the like, in that they are known to the invitor but not known to the invitee and would not be observed by the latter in the exercise of ordinary care. There is no duty to guard against merely possible, as opposed to probable, harm.

3

The obvious-danger rule, however, does not bar recovery when the invitee is forced, as a practical matter, to encounter the obvious danger in order to perform his or her job. *Jenkins v. Int'l Paper Co.*, 318 Ark. 663, 887 S.W.2d 300 (1994).

Furthermore, Arkansas appellate courts have defined the duty owed to business invitees as set forth in the Restatement (Second) of Torts:

> A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he
>
> (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and
>
> (b) has no reason to believe that they will discover the condition or realize the risk involved therein, and
>
> (c) invites or permits them to remain upon the land without exercising reasonable care
>
> (i) to make the condition reasonably safe, or
>
> (ii) to give a warning adequate to enable them to avoid the harm.

Restatement (Second) of Torts § 343 (1965); *see, e.g.*, *Jenkins v. Hestand's Grocery, Inc.*, 320 Ark. 485, 898 S.W.2d 30 (1995).

## III. *Discussion*

Riceland presented excerpts of several depositions in support of its motion for summary judgment. In Escue's deposition, he explained that he had driven a tractor with a hopper-bottom trailer for over fifteen years. He stated that on the morning of his fall, it was wet and foggy, but there was no other change to the loading area or the scale ramp.

4

The area where he fell was open and uncovered and was rough, flat concrete with nothing else around it. Escue said nothing was wrong with the actual surface itself that caused him to fall. Escue explained that the rice bran swirled around inside the building and outside where the trailers were loaded. He recounted that one Riceland employee told him that he had fallen inside the covered area, but he (Escue) had fallen in the uncovered area where the loading took place. Escue agreed there was nothing Riceland could do to prevent the concrete from getting wet, but he claimed that the rice bran on the concrete and the concrete's being wet made the surface slick. However, Escue stated the loading area looked normal, and the concrete, ramp area, and scales looked clean. Escue explained that during previous occasions when he had been to the Riceland facility, he had noticed rice bran on the concrete from the loading of the trucks, but on the day he fell, he could not see the rice bran on the surface. He described the slip-on shoe he was wearing as a house shoe, and he agreed that it was possible he might not have fallen had he been wearing other footwear such as a boot. When asked what evidence he had that Riceland did not maintain the premises in a reasonable and safe condition, Escue responded there was nothing but his injury; he stated that he did not know what evidence he had that the placement of the rice bran was the result of Riceland's actions. Escue thought the rice bran had been on the concrete at least since the day before, and Riceland had not cleaned the rice bran since he slipped on it.

In his deposition, Riceland employee Mitch Mayville testified that he had no personal knowledge of the cleaning efforts the day before the accident occurred, but he said supervisors go behind the employee whose job it is to sweep the area to ensure that the task

5

is actually done. John McNeely testified he was the supervisor in December 2015, and he cleaned up in the evenings when trucks were not being loaded. The process included cleaning all areas, sweeping and scooping up all excess rice bran, and disposing of it properly, with any remaining excess being washed away. McNeely explained that sanitation occurred in the evening after trucks were no longer being loaded. He explained that Riceland required the supervisor leaving work to meet with the next supervisor before leaving his shift to inform the incoming supervisor about issues that had occurred during that prior shift. McNeely said the area where Escue fell was clean but damp; it was a dreary morning, and the ground was sweating. He agreed he wore a work boot with a slip-resistant sole while at working compliance with Riceland's policy.

Kevin Coit, the evening supervisor, testified as to the evening sanitation procedure, explaining that the grounds were washed with a high-pressure water hose. He said it was Grant Caldwell's responsibility to wash down the area where Escue had fallen after the last truck was filled, and if Caldwell was unable to complete that work, either Coit or another employee would clean the area. Coit said that on the night of December 10, he inspected the loading area, and the area was clean.

In response to Riceland's motion for summary judgment, Escue also tendered portions of the depositions. In his deposition, Escue stated commercial granaries were dusty, dirty places to be, and on the morning of the accident, the scales and ramp area were dusty; however, he also said the scale and the ramp area looked clean he "guessed" because they were wet, but there was rice bran on the ground.

6

After hearing arguments on Riceland's motion for summary judgment, the circuit court granted the motion, finding there was no evidence that the presence of moisture and rice bran was the result of any failure of ordinary care on Riceland's part; the proof was that Riceland was good at cleaning up and did so at the end of the previous shift, and it was inspected at the beginning of the next shift; and there was no proof Riceland knew of the presence of a combination of wet surface and rice bran or that those conditions had existed for such a length of time that Riceland should have known of its existence. The circuit court found it would be speculative to conclude Riceland knew of the situation just because it required its employees to wear shoes with nonskid soles or because an employee had previously slipped on another occasion.

On appeal, Escue argues that the circuit court's grant of summary judgment was in error because Riceland knew or should have known that the combination of defatted rice bran and damp concrete created a slippery, dangerous condition. He also argues that if Riceland knew that agricultural facilities like Riceland were dangerous places where people could get injured, this proved Riceland had knowledge of an obvious danger. Lastly, Escue argues that if the danger was obvious, the forced-to-encounter exception applies. We disagree with Escue's contentions.

Escue contends that the circuit court's reliance on *Jenkins*, 318 Ark. 663, 887 S.W.2d 300, in granting summary judgment to Riceland was improper because, in *Jenkins*, the property was under the control of an independent contractor, not the actual owner. Therefore, *Jenkins* did not address whether the property owner should have known of a

7

dangerous condition. Escue further argues that the *Jenkins* analysis does not come into play unless and until a danger is open and obvious to the invitee.

In *Jenkins*, Roy Jenkins was working for his employer, J. Graves Construction, at the International Paper plant moving bundles of material containing asbestos onto a truck to be removed from the plant. The area was cordoned off by J. Graves Construction with flagging noting that asbestos was present. Jenkins was injured while walking backward up a ramp carrying the materials when he slipped in a wet, greasy, slippery substance that was on the material and on the ground in the flagged area. Although Jenkins was aware of the slippery substance and the condition of the work area, he could not identify the substance and could not state the origin of the substance or the length of time it had been on the premises. International Paper claimed the area was dry the week prior to the accident; it had not been made aware of any wet, damp, or slippery substance; and the area was under the exclusive control of J. Graves Construction. Our supreme court upheld a grant of summary judgment in favor of International Paper, holding there was no evidence International Paper knew about the slippery substance in the area to take the matter outside the realm of speculation or to raise a genuine issue of material fact.

Here, the circuit court granted summary judgment because, as with International Paper in *Jenkins*, there was no proof Riceland was aware or should have been aware of the danger or hazard. Viewing the evidence in the light most favorable to Escue and resolving all doubts and inferences against Riceland, we find that summary judgment was proper. There was no evidence presented that Riceland knew or should have known of an allegedly dangerous condition. In the absence of such evidence, Riceland is not liable to Escue.

8

Riceland employees explained the cleaning processes performed during the day and again after the last truck was loaded; these processes included sweeping and scooping excess rice bran from the loading area and washing down the area with a high-pressure hose. Evidence was presented that this process was performed on the night before Escue's accident. Escue presented no evidence that the area where he fell had not been cleaned, or that if there was rice bran on the wet concrete, the rice bran made the surface more slick than wet concrete. Escue testified in his deposition that the loading area looked normal. The concrete, ramp area, and scales looked clean, and he did not notice rice bran on the concrete. Escue stated that he had no evidence, other than his injury, that Riceland did not maintain its premises in a reasonable and safe condition. The mere fact that an accident occurred is not evidence of negligence. *Sammons*, *supra*. Summary judgment was proper because Escue's argument fails on the first element. It is therefore not necessary to address his argument regarding the forced-to-encounter exception.

Affirmed.

GRUBER, C.J., and HIXSON, J., agree.

*Baim Law Firm*, by: *Wm. Kirby Mouser*; *Maxie G. Kizer, P.A.*, by: *Maxie G. Kizer*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellant.

*Waddell, Cole & Jones, PLLC*, by: *Kevin W. Cole* and *Justin E. Parkey*, for appellee.