Cite as 2026 Ark. App. 45

# ARKANSAS COURT OF APPEALS
## DIVISION III
### No. CV-24-443

| | |
|---|---|
| L. DRENNAN PARKS<br>APPELLANT<br><br>V.<br><br>JAMES STEVEN HENDERSON AND MARILEE HENDERSON, AS CO-TRUSTEES OF THE HENDERSON REVOCABLE TRUST<br>APPELLEES | Opinion Delivered January 21, 2026<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. 72CV-21-2610]<br><br>HONORABLE JOHN C. THREET, JUDGE<br><br>AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

**KENNETH S. HIXSON, Judge**

This appeal arises from a property dispute between appellant Lloyd Drennan Parks and appellees James Steven Henderson and Marilee Henderson, as co-trustees of the Henderson Revocable Trust. The parties own adjacent property in Washington County, and Parks unsuccessfully sued the Hendersons on his claim for establishing the width of an easement over the Hendersons' property and his quiet-title claim for ownership of a portion of the Hendersons' property based on boundary by acquiescence and adverse possession. The trial court entered partial summary judgment in favor of the Hendersons on Parks' easement claim based on the trial court's finding that the claim was barred by res judicata. At the subsequent bench trial on the quiet-title cause of action, following Parks' case-in-chief, the trial court granted the Hendersons' motions to dismiss Parks' remaining claims of boundary by acquiescence and adverse possession.

Parks now appeals from the partial summary-judgment order and the order dismissing his remaining claims. On appeal, Parks argues that the trial court erroneously concluded that his easement claim was barred by res judicata. Parks also argues that the trial court erred in dismissing his claims for boundary by acquiescence and adverse possession because he presented a prima facie case at trial on both of those claims. Because we agree that Parks' claim for establishing the width of the easement was barred by res judicata, we affirm the partial summary-judgment order. However, we agree with Parks' remaining arguments, and we reverse the dismissal of his boundary-by-acquiescence and adverse-possession claims and remand for further proceedings on those claims.

I. *Facts and Procedural History*

In 1983, Parks purchased an L-shaped tract of property (similar to the shape of Louisiana) from Bill Carpenter. At the time of the conveyance, Carpenter also owned the property to the north and east of the right angle of the L-shaped property. In 1995, Carpenter's son (to whom Carpenter had conveyed the property north and east of Parks' property) conveyed that property to the Hendersons.[1]

When Parks purchased his property from Bill Carpenter in 1983, he received an easement over what later became the Henderson property. The 1983 warranty deed from Carpenter to Parks conveyed "a right-of-way grant and easement over and across the existing roadway" followed by a description of the easement's location. This easement begins on the

---

[1]In 2019, the Hendersons conveyed their property to James Steven Henderson and Marilee Henderson, as co-trustees of the Henderson Revocable Trust.

north/south boundary line of the parties' property and generally runs in a northerly direction over the Henderson property to access a county road.

In 1998, a dispute arose between Parks and Henderson concerning Parks' use of this easement. In December 1998, Parks filed a complaint for injunctive relief against Steve Henderson alleging that Henderson had interfered with his use of the easement by closing and locking the gate where the county road meets the easement and also by feeding cattle, thereby causing the cattle to congregate on the easement right-of-way. In his complaint, Parks asked for injunctive relief prohibiting Henderson from unreasonably interfering with Parks' use of the easement. In January 1999, Henderson filed a counterclaim against Parks alleging that the inclusion of the language in the 1983 warranty deed from Carpenter to Parks that conveyed the easement was obtained through fraud or mistake without Carpenter's knowledge or consent, and therefore, the easement should be set aside. This prior dispute over the easement resulted in the parties agreeing to a consent judgment entered in April 1999. The consent judgment ordered Steve Henderson to not unreasonably close or lock the gate to the easement; ordered Henderson to not feed cattle near the easement; and provided that Parks may improve the road on the easement and right-of-way as he sees fit, including putting down gravel or other surfacing materials. Unfortunately, as it turns out, the consent judgment did not otherwise define the easement, particularly the width.

The portion of the Hendersons' property that Parks now claims through boundary by acquiescence and adverse possession (hereinafter referred to as "the disputed property") is generally the strip of land between the surveyed north/south boundary line of the parties'

3

property and an old meandering fence that lies to the north of that boundary and extends about 1700 feet eastward from the parties east/west boundary to the county road. The distance between the surveyed north/south boundary line and the fence varies as the fence meanders eastward and, at its maximum, measures about fifty feet in width. It is undisputed that this fence was in existence before Parks purchased his property in 1983 from Bill Carpenter and that part of the fence was removed by the Hendersons in 2016.

On November 19, 2021, Parks initiated this litigation when he filed a petition to quiet title to the disputed property and to establish the scope of the easement. In this petition, Parks alleged ownership of the disputed property between the parties' north/south boundary line and the old fence to the north based on his claim that the fence line was a boundary by acquiescence.[2] Parks alleged that when he bought his property from Bill Carpenter in 1983, both he and Carpenter understood the fence to be the boundary line between the two properties. Further, Parks alleged that after the Hendersons bought their property in 1995, Parks and the Hendersons had the understanding and agreement that the fence constituted the boundary line. Parks alleged that since purchasing his property in 1983, he has maintained, asserted ownership over, and otherwise acted in all respects as owner of the disputed property up to the boundary line established by the fence. Parks alleged further that Carpenter, and later the Hendersons, had acted as respective owners of the property north of the fence and that the parties had acquiesced in the fence being the

---

[2]Parks later filed an amended petition claiming this strip of property by adverse possession.

4

boundary line. Parks stated that in 2000, the Hendersons had a survey done showing that the fence was not the "true" boundary line, but the Hendersons nevertheless did not attempt to claim any interest in the disputed property for over a decade after the survey was completed. Parks stated that it was not until 2016 that the Hendersons unilaterally decided to tear down a portion of the fence, apparently based on the 2000 survey. In his petition, Parks also alleged that the Hendersons had been hindering his use of his easement by attempting to limit his use to the two dirt paths created by vehicles driven over the easement. Parks claimed his easement is required to be thirty feet wide and requested a declaration from the trial court to this effect.

On March 24, 2022, the Hendersons filed a motion for partial summary judgment as to Parks' easement claim only. In their motion, the Hendersons argued that Parks' claims regarding the scope (the width) of the easement are barred by res judicata based on the prior litigation between the parties pertaining to the easement that resulted in a consent judgment in April 1999. The Hendersons stated that neither the 1983 deed conveying the easement to Parks nor the 1999 consent judgment defined the width of the easement as thirty feet but rather confirm it as being only "over and across the existing roadway." The Hendersons argued that because the width of the easement could have been litigated by Parks in the parties' prior lawsuit involving the easement, res judicata barred that claim in the present lawsuit. On April 14, 2022, Parks responded to the Hendersons' motion for partial summary judgment, stating that there was no dispute as to the width of the easement in the prior litigation and that the only issue in dispute was whether an easement existed at all. As such,

5

Parks argued that res judicata did not apply and that the Hendersons' motion should be denied.

On September 7, 2022, the trial court entered an order granting the Hendersons' motion for partial summary judgment on the basis of res judicata. The trial court made these findings:

> 1. Plaintiff, L. Drennan Parks, previously instituted litigation against defendant, Steve Henderson, concerning the same easement identified in Count III of the first amended complaint seeking a declaratory judgment that the width of said easement be held as a matter of law to be 30 feet. That litigation ended in a consent judgment between the parties which confirmed the existence of the easement and plaintiff's right to maintain it.
>
> 2. The deed granting the referenced easement defined the easement as being "over and across" an existing roadway. Due to the fact that this easement was previously the subject matter of litigation between plaintiff and defendant, this court finds that the issue of the width of said easement was necessarily within the issues of the prior litigation and could have been litigated at that time.
>
> 3. Accordingly, it is the order of this court that plaintiff is now barred from further litigating ancillary issues concerning the easement - including, but not limited to its width - based upon a showing by defendant that all required elements of res judicata concerning this issue are met.

On February 14, 2024, Parks' remaining claims of ownership of the disputed property based on boundary by acquiescence and adverse possession went to a bench trial. Parks was the only witness to testify in his case-in-chief.

Parks testified that for two years before he bought his property in 1983, he had hunted on the disputed property with Bill Carpenter at Carpenter's invitation and that the old meandering fence that travels east/west (which Parks now claims as the boundary) was there. Parks stated that, when he bought the property from Carpenter in 1983, Carpenter showed

6

him the location of the property line between their properties, and it was the fence. According to Parks, both he and Carpenter understood the property line to be the fence and treated it as such, and Parks continually used and exercised ownership of the disputed property. Parks stated that he built a gate into the fence that had a lock to control access to the property south of the fence and to "keep people out." Parks stated that during the twelve years before Carpenter's son sold his adjacent property to the Hendersons, Carpenter never exercised ownership of any of the disputed property, nor did he ever take issue with Parks exercising ownership of the disputed property.

Parks described some of his activities on the disputed property. He stated that he spent "every spare moment" that he had cleaning it up and maintaining it. He stated that he kept a tractor there and bulldozed it. There is a "yard area" containing the remnants of a cabin that lies south of the fence on the western portion of the strip of land at issue, which Parks leveled, cleared, and cleaned. Parks stated that he mowed and bush hogged the area. Parks stated that he or his lady friend would plant flowers every year near the old cabin and the gate and that he had built up the gate with tall posts and boulders. Parks stated further that he had frequently hunted deer on the disputed property and that during deer season he would be there for days at a time. Parks also maintained and improved the fence by adding boards.

Parks stated that, after the Hendersons bought the adjacent property in 1995, he continued to utilize and maintain the disputed property, and the Hendersons did not take issue with his use of the property or claim ownership of it. Parks stated that he never saw

7

the Hendersons on the disputed property and that they never utilized that property. Parks stated that after the Hendersons had a survey done in 2000, he continued to exercise control of the disputed property with no claim of ownership from the Hendersons. Parks stated that the fence remained intact until 2016, when Steve Henderson tore part of the fence down. Parks stated that he demanded that Henderson replace the fencing that he had torn down, and although Henderson said he would, he never did. Parks stated that he has continuously asserted ownership of the disputed property since he bought his property and that, after part of the fence was torn down, he filed suit against the Hendersons to establish his ownership. Parks also testified and presented documentation that he has continuously paid the taxes on property contiguous to the strip of land at issue.

On cross-examination, Parks acknowledged that the fence at issue served as a cattle fence. Parks clarified, however, that the fence was *both* a cattle fence and a border fence.

At the close of Parks' case-in-chief, the Hendersons filed a motion to dismiss Parks' claims of boundary by acquiescence and adverse possession under Arkansas Rule of Civil Procedure 50(a), arguing that there was insufficient evidence to sustain either claim. The trial court announced from the bench that, even viewing the evidence in the light most favorable to Parks, it was going to grant the motion to dismiss on both claims.

On February 21, 2024, the trial court entered an order of dismissal with prejudice as to Parks' claims of boundary by acquiescence and adverse possession. The trial court found that Parks failed to present sufficient evidence to establish the elements required to prove boundary by acquiescence—namely, the existence of mutual recognition and agreement that

8

the fence is the true boundary rather than that contained within the parties' legal descriptions. The trial court found further that Parks failed to present sufficient evidence demonstrating that his alleged use of the disputed property meets the legal requirements to prove adverse possession.

Parks timely appealed.

## II. *Arguments on Appeal*

In this appeal, Parks challenges both the partial summary-judgment order that denied his claim to establish the scope of the easement and the order dismissing his remaining claims of boundary by acquiescence and adverse possession. We discuss these orders separately.

### A. Partial Summary Judgment on Parks' Scope-of-the-Easement Claim

Parks alleged in his petition below that his easement across the Hendersons' property was required to be thirty feet wide and requested a declaration from the trial court to this effect. The trial court entered partial summary judgment against Parks with respect to this claim on the basis of res judicata, finding that this issue could have been litigated in the prior litigation between the parties in 1998–99 pertaining to the easement. Parks argues that the trial court erred in finding that res judicata barred this claim because the width of the easement was not in dispute in the prior litigation and there was thus no reason or opportunity for him to assert that claim at that time.

Our summary-judgment standard is well settled. Summary judgment may be granted only when there are no genuine issues of material fact to be litigated, and the moving party

9

is entitled to judgment as a matter of law. *Greenlee v. J.B. Hunt Transp. Servs.*, 2009 Ark. 506, 342 S.W.3d 274. The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *McGrew v. Farm Bureau Mut. Ins. Co. of Ark.*, 371 Ark. 567, 268 S.W.3d 890 (2007). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Greenlee*, *supra*. On appellate review, this court determines if summary judgment was appropriate by deciding whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Greenlee*, *supra*. We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.*

Res judicata bars relitigation of a subsequent suit when (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) the first suit was fully contested in good faith; (4) *both suits involve the same claim or cause of action*; and (5) both suits involve the same parties or their privies. *Sterkel v. Sisler*, 2025 Ark. App. 212, 710 S.W.3d 478 (emphasis added). Res judicata bars not only the relitigation of claims that were actually litigated in the first suit but also those that could have been litigated. *Id.* Where a case is based on the same events as the subject matter of a previous lawsuit, res judicata will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies. *Swofford v. Stafford*, 295 Ark. 433, 748 S.W.2d 660 (1988). The purpose of the doctrine is to

10

prevent parties' relitigating issues on which they have already been given a fair trial. *McCormac v. McCormac*, 304 Ark. 89, 799 S.W.2d 806 (1990).

Parks asserts that the only element of res judicata at issue is the fourth element above—whether both suits involve the same claim or cause of action. Parks argues that this element was not met here because in the prior litigation, the controversy was whether an easement existed but not the width of the easement if one did exist. Parks argues that it was not until recently when the Hendersons tore down fencing on either side of the easement that an issue as to the width of the easement was created and that the issue was not ripe in the prior litigation.

In support of his argument, Parks relies on *Perkins v. Henry*, 2012 Ark. App. 707, 425 S.W.3d 802. In that case, Perkins bought property from Henry in 2005 for the purpose of constructing a house in a residential subdivision, which was adjacent to a runway. An attachment to the warranty deed included several land-use restrictions, and a separate paragraph provided that all property owners would have use of the runway upon payment of an annual $250 maintenance fee. In 2008, Henry filed for and was granted an injunction requiring Perkins to remove trees and a metal building on his property because these allegedly violated the land-use restrictions. On appeal, this court reversed the injunction, holding that the land-use restrictions were unenforceable due to the lack of a general plan of development.[3] Later, Perkins filed a new action to enforce his use of the runway, and Henry

[3]*See Perkins v. Henry*, 2010 Ark. App. 126.

11

argued that the claim was barred by res judicata because the land-use restrictions attached to the deed had been declared invalid and unenforceable in the prior litigation. The trial court found that Perkins' claim for use of the runway was barred by res judicata, but this court reversed. We stated in *Perkins* that there was no controversy in the prior litigation over the use of the runway and that this was an entirely different claim from that sought in the original action. We held in *Perkins* that because there was no controversy concerning the use of the runway at the time of the first action, there was no reason for either party to have raised or litigated that issue at that time, and thus, res judicata did not apply.

Parks argues that, similar to *Perkins*, the parties never disputed the width of the easement until recently, and there was no controversy concerning that issue in the prior litigation. As such, Parks argues that res judicata does not apply and that the partial summary-judgment order should be reversed.

We do not agree with Parks' argument, and we find *Perkins* distinguishable. In *Perkins*, the prior litigation involved only enforcement of land-use restrictions, which was an entirely different claim than the use of the runway presented in the subsequent litigation. In the present case, in contrast to *Perkins*, the prior litigation pertained to a controversy involving the same easement over which Parks now brings a subsequent cause of action. Notably, the 1983 deed that conveyed the easement to Parks did not assign any particular width to the easement other than it being "over and across the existing roadway." When Parks filed the complaint against the Hendersons in the prior litigation, he alleged that the Hendersons were interfering with his easement by closing and locking a gate and by feeding cattle on the

right-of-way. The prior litigation resulted in a consent judgment in April 1999 that confirmed Parks' right to use the easement free from the Hendersons' interference, and it also permitted Parks to improve the surface of the road on which the easement lies. Any attempt to enlarge the existing easement beyond that of the language granting it was within the same subject matter contemplated in the previous lawsuit and could have been litigated there. Therefore, we hold that the trial court did not err in ruling as a matter of law that Parks' present claim to a thirty-foot-wide easement is barred by res judicata.

B. Dismissal of Parks' Claims for Boundary by Acquiescence and Adverse Possession

After a bench trial on the remaining issues, the trial court granted the Hendersons' motion to dismiss Parks' remaining claims of boundary by acquiescence and adverse possession of the disputed property at the close of Parks' case-in-chief. Parks argues that he presented a prima facie case on both of these claims and that dismissal on both claims was therefore improper. For the following reasons, we agree that the trial court erred in dismissing these claims.

In a nonjury trial, a party may challenge the sufficiency of the evidence at the conclusion of the opponent's evidence by moving to dismiss. Ark. R. Civ. P. 50(a). When a party moves for dismissal in a nonjury trial, it is the duty of the trial court to consider whether the claimant's evidence, given its strongest probative force, presents a prime facie case. *Crenshaw v. Crenshaw*, 2012 Ark. App. 695. The trial court must use the same legal standard in evaluating a motion to dismiss as it would in evaluating a motion for directed verdict. *Sammons v. SEECO, Inc.*, 2012 Ark. App. 650, 425 S.W.3d 38. The trial court must

13

decide whether, if it were a jury trial, the evidence would be sufficient to present to the jury. *Id.* In evaluating whether the evidence is substantial enough to make a question for the fact-finder, however, the trial court may not assess the witnesses' credibility. *Id.* When reviewing the grant of a motion to dismiss, we view the evidence in the light most favorable to the nonmoving party, giving the proof presented its highest probative value and taking into account all reasonable inferences deducible therefrom, and we will affirm if there is no substantial evidence to support a jury verdict. *Crenshaw, supra.* If, however, the evidence is such that fair-minded persons might reach different conclusions, a fact question exists and the dismissal will be reversed. *Id.*

### 1. *Boundary by Acquiescence*

A boundary by acquiescence may arise when adjoining property owners tacitly accept a fence or other monument as the visible evidence of a property boundary and apparently consent to it. *White v. Randolph*, 2025 Ark. App. 336. A boundary by acquiescence is inferred from the conduct of the landowners over many years that implies the existence of an agreement about the location of the boundary line; in such circumstances, the adjoining landowners and their grantees are precluded from claiming that the boundary so recognized and acquiesced to is not the true one, although it may not be. *Fritchie v. Hearne*, 2025 Ark. App. 276. The period of acquiescence need not last for a specific length of time, but it must be for "many years" or a "long period of time" sufficient to sustain the inference that there has been an agreement concerning the location of the boundary line. *Jennings v. Burford*, 60 Ark. App. 27, 31, 958 S.W.2d 12, 14 (1997). A boundary by acquiescence is usually

represented by a fence, a turnrow, a lane, a ditch, or some other monument tacitly accepted as visible evidence of a dividing line. *Fritchie*, *supra*. However, neither the mere existence of a fence nor one party's subjective belief or opinion that a fence is a boundary line will sustain a finding of acquiescence. *White*, *supra*. There must be mutual recognition or mutual agreement of a fence (or other monument) as the dividing line before there can be any boundary by acquiescence. *Id*. In determining whether a fence between two tracts has become a boundary by acquiescence, the basic question is one of intention: namely, whether the adjoining landowners both meant to recognize the fence as a boundary. *Id*. Express recognition or agreement between the parties is not necessary, and silent acquiescence is sufficient when mutual recognition of the boundary line can be inferred from the conduct of the parties over a period of years. *Waggoner v. Alford*, 2021 Ark. App. 120, 619 S.W.3d 59.

Parks argues that he presented a prima facie case that the meandering fence bordering the disputed property had become a boundary by acquiescence. We agree. Parks testified that this fence was present when he bought his property from Bill Carpenter in 1983, and that when he bought the property, Carpenter represented to Parks that the fence was the boundary line separating the properties.[4] Parks testified that, for the next twelve years, both he and Carpenter recognized the fence as the boundary, with Parks utilizing the disputed

---

[4]Although the Hendersons argue that any conversations between Parks and Carpenter were hearsay and should not be considered as evidence of the boundary, we note that Parks' testimony in this regard was admitted at trial and was therefore part of the evidence to be considered by the trial court in testing the Hendersons' motion to dismiss.

property and Carpenter never putting Parks on notice of any claim of ownership. Parks testified that he built a gate in the fence and locked the gate to keep others off the disputed property. Parks also stated that he repaired and maintained the fence.

According to Parks, after the Hendersons bought Carpenter's property in 1995, he continued to utilize the disputed property without objection. Parks stated that even after the Hendersons had a survey performed in 2000, they made no claim to the disputed property for many years thereafter, and they did not assert any ownership interest to the disputed property until 2016 when Steve Henderson tore down part of the fence.

In deciding whether Parks made a prima case, the trial court was required to view the evidence in the light most favorable to Parks and give the evidence its highest probative value, and the trial court was not permitted to assess Parks' credibility. *See Crenshaw*, *supra*; *Sammons*, *supra*. Viewing the evidence in this light, we hold that Parks' testimony was sufficient to create a question for the fact-finder as to whether the fence line had become a boundary by acquiescence. Accordingly, we reverse the trial court's dismissal of this claim.

## 2. *Adverse Possession*

To prove the common-law elements of adverse possession, a claimant must show that he has possessed the contested property continuously for seven years and that the possession has been actual, open, notorious, continuous, hostile, and exclusive, and it must be accompanied with an intent to hold against the true owner. *Stevens v. Hillenburg*, 2024 Ark. App. 295, 689 S.W.3d 695. Arkansas Code Annotated section 18-11-106 (Repl. 2015) adds

the requirement of proving color of title and payment of taxes on either the property in dispute or contiguous property.[5]

This court recently held that the hostility element should be determined by behaviors and not primarily by inquiring into a claimant's subjective intent. *Collier v. Gilmore*, 2018 Ark. App. 549, 562 S.W.3d 895. In *Collier*, the claimant believed he owned the contested tract of land for forty years, and during that time, he possessed and farmed the contested property; however, the claimant was mistaken on where the relevant deed placed the true boundary line. We favored the claimant's conduct over his intent when determining hostile use and held that "the possession was 'hostile' because it was to an extent greater than the deed anticipated; and his conduct was not subordinate to [the true owner's property] interests or done with [the true owner's] permission." *Id.* at 9, 562 S.W.3d at 900. This rationale is in accord with the "oft-repeated statement that adverse possession is a possession commenced in wrong but maintained in right," as such statement "does not mean that the possessor must commence his possession with an intentional wrong, for the doctrine of adverse possession is intended to protect one who honestly enters into possession of land in the belief that the land is his own." *Barclay v. Tussey*, 259 Ark. 238, 241, 532 S.W.2d 193, 195 (1976).

We have held that planting grass, trees, and shrubs and maintaining them for a period of seven years is sufficient to put the world on notice that the party asserting adverse

---

[5]It is not disputed that Parks has color of title and has paid taxes on property contiguous to the disputed property.

possession is claiming the property as his own. *Walker v. Hubbard*, 31 Ark. App. 43, 787 S.W.2d 251 (1990). Also, when both parties maintain and mow their property up to the fence line, when said fence serves to keep livestock on their respective properties, this has been sufficient to establish adverse possession. *Boyette v. Vogelpohl*, 92 Ark. App. 436, 214 S.W.3d 874 (2005).

Parks argues that he presented a prima facie case of adverse possession with respect to the disputed property, and we agree. According to Parks' testimony, from the time he purchased his property in 1983, he continuously engaged in conduct consistent with ownership of the disputed property. Parks testified that he bulldozed, bush hogged, and mowed on the disputed property. Parks stated further that he built and maintained a locked gate on the fence that borders the disputed property. Parks stated that planted flowers every year and hunted on the property. And Parks stated that, up until 2016, neither Carpenter nor the Hendersons interfered with his use of the disputed property, occupied the property, or utilized the property.

Here again, in deciding whether Parks made a prima case, the trial court was required to view the evidence in the light most favorable to Parks and give the evidence its highest probative value, and the trial court was not permitted to assess Parks' credibility. *See Crenshaw, supra*; *Sammons, supra*. Viewing the evidence in this light, we hold that Parks' testimony was sufficient to create a question for the fact-finder as to whether he had acquired the disputed property by adverse possession. Accordingly, we reverse the trial court's dismissal of this claim.

III. *Conclusion*

In conclusion, we hold that the trial court correctly ruled that Parks' claim for establishing the width of the easement was barred by res judicata, and we therefore affirm the partial summary-judgment order on that issue. However, we agree with Parks' remaining arguments, and we reverse the dismissal of his boundary-by-acquiescence and adverse-possession claims and remand for further proceedings on those claims.

Affirmed in part; reversed and remanded in part.

WOOD and BROWN, JJ., agree.

*Andrew J. Myers*, for appellant.

*Davis, Butt, Taylor & Clark, PLC*, by: *Jacob T. Newcomb*, for appellees.