SHELTON v. DANIEL.

5-2933 366 S. W. 2d 709

Opinion delivered April 15, 1963.

*Hall, Purcell & Boswell,* for appellant.

*Fred E. Briner,* for appellee.

FRANK HOLT, Associate Justice. This is an action to quiet and confirm title to one hundred and twenty (120) acres of land. The appellees are Rachel Daniel, widow of J. W. Daniel, and their adult children, Doyle Daniel, Dorman Daniel, Guinn Daniel and Clint Daniel. The appellant is Liller Mae Shelton, widow of Robert Shelton. The appellees assert in their complaint that their ownership of this farm is based upon (1) a lost and unrecorded deed made in 1920 by Robert Shelton conveying the property to J. W. Daniel and R. W. Daniel, a partnership; (2) an order of the Saline Chancery Court on September 16, 1927; and (3) that appellant's title claim is barred by laches and estoppel. Appellant filed her answer and denied the validity of each of appellees' claims. Appellant contends she is the rightful owner because (1) she is the surviving widow of the record holder of the legal title, Robert Shelton, who died intestate in 1920 and (2) she has a quitclaim deed dated in 1959 from her children

and heirs of her deceased husband. The court vested title in appellees and therefrom comes this appeal.

Thus, the evidence on these rival claims necessarily covers a span of approximately forty (40) years. For several years before Robert Shelton died intestate in 1920 he had an open account with J. W. Daniel and R. W. Daniel who owned, as a partnership, a general mercantile store. It is undisputed that Shelton owed the store an annual balance which in 1918 amounted to $229.76. Mrs. Rachel Daniel testified that Mr. Shelton gave her husband, J. W. Daniel, an instrument in 1918 or 1919 which she understood was a deed based on their various business transactions. She claimed that the instrument or deed was entrusted to her lawyer, now deceased. No such instrument or deed is recorded or found. The partnership ledger on Shelton's account reflects the following entry dated January 20, 1919: "By payment by place even." J. W. Daniel died intestate in 1926 and on September 16, 1927, the chancery court decreed a partition of the partnership property and therefrom awarded the lands in question to appellees. The appellant was not made a party to this proceeding. It is undisputed that since about 1918 J. W. Daniel, or his widow and heirs, the appellees, have paid the taxes on this property except in 1959 when appellant's daughter paid them as delinquent taxes. The appellees have never lived on the property. However, in addition to the payment of taxes for approximately forty (40) years, they have exercised other acts of ownership and control such as leasing the property to numerous tenants for farming purposes, building and maintaining fences thereon, the rebuilding of a dwelling which had burned; using the lands for pasture and raising cattle; the planting of some 2,000 pine seedling trees on two different occasions; the cutting of timber and otherwise general management of the property. The testimony of other witnesses tends to corroborate appellees.

Appellant admits that her husband, Robert Shelton, had business transactions with J. W. Daniel and, according to her and her daughter's testimony, Shelton gave Daniel a mortgage on the farm about 1919, which mort-

gage was transferred from his mules to the farm so he could sell the mules. There is no record evidence of such mortgage. Mrs. Shelton denied ever signing any instrument in favor of the Daniels. She testified she was never financially able to pay the mortgage she thought existed. There is no evidence that appellant or anyone else ever made any effort to determine from the appellees or elsewhere the existence, amount, or terms of such a mortgage. Her daughter testified that she had consulted several lawyers before 1949 about their legal rights and for the past 15 years she and other members of the family, living in close proximity, had frequently observed the farm with the belief appellees ''were entitled to use it until the mortgage was paid.'' According to the evidence appellees' right of ownership of the land was challenged in 1959. This consisted of two acts: Appellant's daughter paid the delinquent taxes and appellant filed a quitclaim deed to the property, which deed was executed to her by the heirs of Robert Shelton, her deceased husband.

The decree recites that the court:

''* * * finds the lands in question * * * were owned by Robert Shelton and that J. W. Daniel purchased said lands from Robert Shelton on or about the year 1918. That a deed was never delivered to J. W. Daniel but that the heirs of Robert Shelton are now barred by laches and estopped from claiming any interest in said lands * * *.''

Appellant urges for reversal that the doctrine of laches does not apply against those seeking to enforce legal title. We think that the recent case of *Mize* v. *Mize*, opinion dated February 11, 1963, Law Rep. No. 3, is ample authority to reject this contention of appellant. The facts in the *Mize* case are similar to the case at bar. Both of these cases were tried before the same Chancellor and similar decrees were rendered in each case. In the *Mize* case we said:

''From the facts herein enumerated, it is established that for a period of more than forty years, though he

lived within a comparatively short distance of the land, did some visiting with members of the Sheridan family, and was aware of the improvements that had been made to the premises, no action was ever taken * * * to enforce his claim to the property.''

Further, quoting from *Tatum* v. *Arkansas Lbr. Co.*, 103 Ark. 251, 146 S. W. 135:

'' 'Laches in legal significance is not mere delay, but delay that works disadvantage to another. * * * The disadvantage may come from the loss of evidence, change of title, intervention of equities, and other causes; but, when a court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief.' ''

We think this most recent decision by this court is sufficient on which to rest our affirmance of the trial court's decree.[1]

Furthermore, in one of our earlier cases, *Walker* v. *Norton, Exec.*, 199 Ark. 593, 135 S. W. 2d 315, the subject of laches was considered. The following language is pertinent to the facts in the instant case:

''* * * the rule is peculiarly applicable where the difficulty of doing entire justice arises through the death of the principal participants in the transactions complained of, or of the witness or witnesses, or by reason of the original transactions having become so obscured by time as to render the ascertainment of the exact facts impossible. * * * [Citing cases]

This court is committed to the rule that long and unreasonable delays wherein prejudice has resulted by reason of change of conditions or loss of evidence, laches may rightfully be invoked against one so neglecting his alleged rights.'' [Citing cases]

We think, also, that the appellant makes a ''stale demand'' in this case. The question of laches and stale

---

[1] See, also, *Neal* v. *Stuckey*, 202 Ark. 1119, 155 S. W. 2d 683; *Falls* v. *Jackson*, 208 Ark. 435, 186 S. W. 2d 787; *Mitchell* v. *Malvern Lumber Co.*, 222 Ark. 266, 258 S. W. 2d 549; and 30 C. J. S. § 112, p. 520, § 113, p. 525.

demand arose in the case of *Skelly Oil Co.* v. *Johnson,* 209 Ark. 1107, 194 S. W. 2d 425. In that case a mineral claimant was omitted from a foreclosure suit in 1923 and asserted his claim in 1945. In determining what was a reasonable time in which this claimant had a right to redeem his interest this court said that, in the absence of circumstances supporting a plea of laches, the best guide for determining a reasonable time is the equitable rule of a stale demand. In defining this equitable doctrine we said that it is:

"* * * one that has for a long time remained unasserted; one that is first asserted after an unexplained delay of such great length . . . as to create a presumption . . . that it has been abandoned . . . It is an inherent doctrine of jurisprudence that nothing less than conscience, good faith, or reasonable diligence can call courts of equity into activity, and they will not grant aid to a litigant who has negligently slept on his rights and suffered his demand to become stale, where injustice would be done by granting the relief asked."

Also, we think the facts in the case at bar support the presumption of a lost grant. In *Carter* v. *Goodson,* 114 Ark. 62, 169 S. W. 806, the plaintiff brought an action in 1914 to eject from the land the defendant who had exercised acts of ownership and possession for approximately 45 years. On the question of the existence of a lost deed the court, as authority for applying the doctrine of a lost grant, quoted with approval this language:

"When possession and use are long continued they create a presumption of lawful origin; that is, that they are founded upon such instruments and proceedings as in law would pass the right to the possession and use of the property. It may be, in point of fact, that permission to occupy and use was given orally, or upon a contract of sale, with promise of a future conveyance, which parties have subsequently neglected to obtain, or the conveyance executed may not have been acknowledged, so as to be recorded, or may have been mislaid or lost. Many circumstances may prevent the execution of a deed

of conveyance, to which the occupant of the land is entitled, or may lead to its loss after being executed. * * *

The general statement of the doctrine, as we have seen from the authorities cited, is that the presumption of a grant is indulged merely to quiet a long possession which might otherwise be disturbed by reason of the inability of the possessor to produce the muniments of title, which were actually given at the time of the acquisition of the property by him or those under whom he claims, but have been lost, or which he or they were entitled to have at that time, but had neglected to obtain, and of which the witnesses have passed away, or their recollection of the transaction has become dimmed and imperfect. * * * the reason for attaching such weight to a possession of this character is the notoriety it gives to the claim of the occupant; and, in countries where land is generally occupied or cultivated, it is the most effective mode of asserting ownership."

Also, see, 2 C.J.S., Presumption of Lost Grant, § 231, p. 873.

In the case at bar the appellant has permitted her claim to rest dormant for approximately forty (40) years while living in reasonable proximity to the lands in question and being fully aware of the long and consistent dominion and control of the lands by the appellees. We think the facts in this case support the Chancellor's decree.

The decree is affirmed.