Jimmy Dale SWINK, Jr., and First American Securities, Inc. *v.* Gerald GIFFIN; Kenneth R. Harter; Stephen Blake Murchison; Jack A. Burney, Jr.; John E. Locke, Jr.; Gene Allen; Tony Alexander; VSI, Inc.; John Doe Trader I; John Doe Trader II; and John Doe Trader III

97-667                                                    970 S.W.2d 207

Supreme Court of Arkansas
Opinion delivered June 4, 1998

*McHenry Law Firm*, by: *Donna Wolfe McHenry* and *Robert M. McHenry*, for appellants.

*Wood & Lockhart, PLC*, by: *W. Kirby Lockhart*, for appellees.

DAVID NEWBERN, Justice. The appellees were traders who worked for appellant Jimmy Dale Swink, Jr., and his securities firm, appellant First American Securities, Inc. ("FASI"). The appellees "walked out" to start their own securities business and allegedly took with them the "customer list" that they had used while working at FASI. Mr. Swink, Jr., and FASI sued the appellees for misappropriation of a trade secret (the customer list) in violation of Ark. Code Ann. §§ 4-75-601 to 4-75-607 (Repl. 1996); breach of individual confidentiality agreements; intentional interference with business expectancies; and conversion. The plaintiffs brought additional claims against appellee Gerald Giffin for breach of stock-sale and purchase agreements; breach of fiduciary duty; and misrepresentation. The plaintiffs sought damages and injunctive relief and also requested that a constructive trust be

imposed upon profits made by the defendants from the use of the customer list.

The Chancellor denied the appellees' motion for summary judgment, and the case proceeded to trial. At the conclusion of the plaintiffs' case, the defendants moved for a directed verdict or to dismiss, asserting that there had been no proof that the plaintiffs even owned the list in question and that, in any event, the requested relief was barred by laches.

The Chancellor agreed that the plaintiffs failed to make a *prima facie* case of ownership of the list and thus "directed a verdict" on the misappropriation and conversion claims relating to the list. As the only evidence of damages introduced by the plaintiffs related to the list, and as they had failed to show that they owned the list, the Chancellor also directed a verdict on the other claims. She ruled in the alternative that the defendants were entitled to a directed verdict on the basis of laches.

Although the Chancellor and the parties referred to the defendants' motion as one for "directed verdict," we will discuss it as a motion to dismiss as contemplated by Ark. R. Civ. P. 50(a) for chancery and other bench trials. The question, generally, is whether the plaintiffs presented a *prima facie* case, just as in jury trials where a verdict may be in prospect. Our holding is that the dismissal was premature, and thus we reverse and remand the case.

### 1. Prima facie *case*

Jimmy Swink, Jr., testified that he had bought the customer list from his father, Jimmy Swink, Sr., as part of a "package deal" purchase of assets that had belonged to Mr. Swink, Sr.'s securities firm, Swink & Company, Inc. He testified that he had given his parents promissory notes totalling $240,000 for the assets.

Attorney Pat James, who had represented both of the Swinks and FASI, testified that Mr. Swink, Sr., had acquired the customer list from Swink & Company, Inc., and that Mr. Swink, Jr., acquired it from Mr. Swink, Sr.

In her order of dismissal, the Chancellor referred to the lack of any documentation whatever to indicate that Mr. Swink, Jr.,

was the owner of the customer list. She also referred to expert testimony presented by the plaintiffs to the effect that the customer list was worth $1,000,000. There was evidence that a securities-dealer license worth $50,000 was included in the $240,000 "package deal." She found it incredible that the "package" could have included a $1,000,000 asset, as it would have been purchased for less than $200,000.

■ ■ While we understand that the Chancellor's action was based upon her assessment of the credibility of the testimony presented by the plaintiffs, it was error for her to have made that assessment prior to the conclusion of the evidentiary portion of the trial. In a long line of cases, beginning with *Werbe v. Holt*, 217 Ark. 198, 229 S.W.2d 225 (1950), we have held that a chancellor's duty in the circumstance presented here is to review the defense motion for dismissal at the conclusion of the plaintiffs' case by deciding whether, if it were a jury trial, the evidence would be sufficient to present to the jury. Although the *Werbe* case was decided when the rule in effect was found in Act 470 of 1949, Ark. Stat. Ann. § 27-1729 (Repl. 1962), and considered a motion called "demurrer to the evidence," both Rule 50(a) and the old statute permit the granting of a dismissal only when the plaintiff's evidence is insufficient to go forward, *i.e.*, to constitute a *prima facie* case for relief.

In *Neely v. Jones*, 232 Ark. 411, 337 S.W.2d 872 (1960), we recited the same rule as in the *Werbe* case. The matter was remanded, and after hearing very little additional evidence and conducting a view of property with respect to which there was a boundary dispute, the Chancellor reached the same result as he had originally declared. On appeal, the plaintiff argued our decision was law of the case in favor of the plaintiff and posed the following: "We would like to know just what is the difference between a chancellor sustaining a demurrer to certain evidence and deciding litigation the same way on the same evidence." In response, Justice George Rose Smith wrote for a unanimous court:

> There is a very important difference. Ever since the decision in *Werbe v. Holt* [citation omitted], we have consistently held that a demurrer to the plaintiff's evidence should be sustained only if that proof, viewed in its most favorable light, would

> present no question of fact for a jury if the case were being tried at law. In such a situation the chancellor *does not exercise fact-finding powers that involve determining questions of credibility* or of the preponderance of the evidence. *Brock v. Bates,* 227 Ark. 173, 297 S.W.2d 938 [1957]. [Emphasis supplied.]

*Neely v. Jones,* 234 Ark. 812, 813, 354 S.W.2d 726, 727 (1962). Other cases in which we have reached the same result include *Minton v. McGowan,* 253 Ark. 945, 490 S.W.2d 136 (1973); *Pults v. Pults,* 236 Ark. 434, 367 S.W.2d 120 (1963); and *Wood v. Brown,* 235 Ark. 500, 361 S.W.2d 67 (1962).

■ The record in this case shows that the defendants challenged the right of the plaintiffs to recover because the plaintiffs had not shown ownership of the customer list. Although they do so on appeal, at the trial the plaintiffs did not challenge the assumption that ownership was required for them to recover but responded with arguments that they had presented *prima facie* evidence of ownership. The only issue we reach on this point is that the plaintiffs had indeed, primarily through the testimony of Mr. Swink, Jr., established a *prima facie* case on the issue of ownership.

### 2. Laches

■ Concerning the Chancellor's alternative basis for dismissal of the plaintiffs' complaint, we need only say that the defendants did not present evidence showing that they had changed their position to their detriment in reliance upon the plaintiffs' delay of eighteen months in bringing their claim. Laches requires a demonstration of prejudice to the party alleging it as a defense resulting from a plaintiff's delay in pursuing a claim. *Gordon v. Wellman,* 265 Ark. 914, 582 S.W.2d 22 (1979); *Shelton v. Daniel,* 236 Ark. 454, 366 S.W.2d 709 (1963); *Welborne v. Preferred Risk Ins. Co.,* 232 Ark. 828, 340 S.W.2d 586 (1960).

The defendants in this case apparently sought to satisfy the prejudice element of the laches defense by arguing that they had built up a good business using the customer list. To us, that seems to be the virtual opposite of prejudice.

Reversed and remanded.

IMBER, J., not participating.

Special Justice TED N. DRAKE joins in this opinion.