Mike WOODALL and Mike Woodall Auto Sales,
Inc. *v.* CHUCK DORY AUTO SALES, INC.

01-659                                          61 S.W.3d 835

Supreme Court of Arkansas
Opinion delivered December 13, 2001

*Eichenbaum, Liles & Heister, P.A.*, by: *Peter B. Heister*, for appellant.

*Dover & Dixon, P.A.*, by: *M. Darren O'Quinn*, for appellee.

R OBERT L. BROWN, Justice. Appellants Mike Woodall and Mike Woodall Auto Sales, Inc. (Woodall), appeal from a judgment which memorializes a directed verdict in favor of appellee Chuck Dory Auto Sales, Inc. (Dory), and awards Dory damages for a counterclaim in the amount of $102,230. Woodall's one point on appeal concerns whether the circuit judge erred in granting a directed verdict in favor of Dory, when the loans at issue carried with them a usurious interest rate. We reverse the judgment and remand for further proceedings.

On December 15, 1998, Woodall filed a complaint, which was followed by an amended complaint in this matter, and asserted that during the years 1995, 1996, and 1997, Dory made short term loans to him "virtually every business day," which ranged from $50,000 to $125,000 per day in exchange for car titles. The term of each loan, he alleged, was typically one business day. Dory charged him interest in the amount of $75.00 per title, and the typical interest paid per day ranged from $375 to $800. These loans, he contended, violated Article 19, § 13 of the Arkansas Constitution in that the interest assessed exceeded the rate of five percent above the Federal Discount Rate at the time of the contracts. Thus, he concluded, the loans were void with respect to unpaid interest, and he was entitled to twice the interest paid on the usurious loans.

Dory answered and pled the affirmative defenses of comparative fault, estoppel, laches, payment, release, set-off, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. He also filed a counterclaim for judgment for three checks which Woodall made payable to him but which were returned for insufficient funds. The three checks totaled $102,230. Dory claimed twice their value, or $204,460.

On February 2, 2001, the circuit judge held a bench trial on the matter and heard testimony from Woodall and his wife, Renae Woodall. An employee of Regions Bank, Ms. Karen Howell, who was a defense witness, was taken out of turn and testified to the amount of the Woodall checks returned for insufficient funds. At the close of Woodall's case, Dory moved the judge for a directed

verdict on grounds that Woodall had not made a case for usury, that the $75 fee per title was not interest, and that the transactions were sales.[1] The circuit judge ruled:

> It will be the ruling of the Court that both of these parties were businessmen. They were dealing at arms length, one with the other. They knew that there was no title or transfers — transfer of titles or possessions; there was no floor plan contract between them.

> And I understand it, there was no written agreement of any kind between them, no drafting agreement, no floor plan, no notes, no nothing except what I'm going to call, which one of you called in your briefs, a transaction fee, which these gentlemen agreed upon at the start of this and which they carried out till the very end of it was a transaction fee, starting with a hundred dollars, ending at $75 per vehicle. And I'm going to rule that that was not interest, that that was simply a charge that was made for the purpose of transacting business.

The judge further ruled on Dory's counterclaim, without objection by Woodall:

> Well, based upon that ruling, I think [Dory] would be entitled to [his] counterclaim of $102,230.

> It's just inconceivable to me, gentlemen, that these folks could go through three years transacting a total of, if my figures are correct, $62,550,464 worth of business with $357,700 in transaction fees being paid, and all at once when the defendant [sic] goes out of business he starts crying wait a minute, I've been charged too much. It's just — it's beyond me to think that these people did not know what they were doing. If there was something illegal, I think they even condoned it. But I don't at this point think that there was anything wrong with this.

Judgment was entered on February 21, 2001.

Woodall urges, as his sole point on appeal, that the circuit judge erred in finding that the $75 charge per title did not constitute interest and in dismissing his complaint. We agree.

---

[1] Ark. R. Civ. P. 50(a) provides that in a nonjury case, a party moves to dismiss rather than for a directed verdict. Accordingly, for the balance of the opinion, we will refer to the motion as one for dismissal.

■ The standard of review, when the grant of a motion for directed verdict or motion to dismiss is involved, is important to the resolution of this case. We have previously set forth that standard:

> In determining whether a directed verdict should have been granted, we review the evidence in the light most favorable to the party against whom the verdict is sought and give it its highest probative value, taking into account all reasonable inferences deducible from it. *Lytle v. Wal-Mart Stores, Inc.,* 309 Ark. 139, 827 S.W.2d 652 (1992). A motion for directed verdict should be granted only if there is no substantial evidence to support a jury verdict. *Mankey v. Wal-Mart Stores, Inc.,* 314 Ark. 14, 858 S.W.2d 85 (1993). Where the evidence is such that fair-minded persons might reach different conclusions, then a jury question is presented, and the directed verdict should be reversed. *Howard v. Hicks,* 304 Ark. 112, 800 S.W.2d 706 (1990).

*Morehart v. Dillard Dep't Stores,* 322 Ark. 290, 292, 908 S.W.2d 331, 333 (1995).

■ We further have said that a trial court's duty is to review a motion for directed verdict or dismissal at the conclusion of a plaintiff's case by deciding whether, if it were a jury trial, the evidence would be sufficient to present to the jury. *See Swink v. Giffin,* 333 Ark. 400, 970 S.W.2d 207 (1998). In making that determination, the trial court does not exercise fact-finding powers that involve determining questions of credibility. *See id; Neely v. Jones,* 234 Ark. 812, 354 S.W.2d 726 (1962).

In the case at hand, Woodall and his wife, Renae Woodall, described their standard way of doing business with Dory. According to the Woodalls, each afternoon Renae Woodall would place four to eight certificates of title for vehicles in separate envelopes with the vehicle's make, model, and year marked on the front of the envelope and print a computer sheet showing the value of each vehicle. Assignments of the certificates of title were not completed, and possession of the vehicles did not change hands. No other documentation was included in any of the envelopes. The envelopes and sheet were delivered to Dory by a driver, at which time Dory would write a check payable to Woodall for the total value of those vehicles and send it back to Woodall by means of the same driver. Woodall would deposit Dory's check. The next morning, Woodall would repay what he described as a loan to Dory, together with a transaction fee of $75 per vehicle which he described as interest. Dory then returned the envelopes to Woodall. Thus,

Woodall maintains that a case for usurious interest on the loans was made.

Dory counters Woodall's case in his brief before this court by arguing that the circuit judge made a credibility call and did not believe Woodall. He points out that Woodall was a convicted felon and had made the comment in a previous deposition that he was "buying back the titles [he] had sold [to Dory,]" which evidenced that sales, not loans, had taken place. Dory underscores that he paid the fair market value for these vehicles on a daily basis, got the certificates of title, and was paid a transaction fee for his trouble.

■ There are three problems with the position Dory has taken in this case. First, the circuit judge's own words do not reveal that he decided this case based on the credibility of the parties. Secondly, even if the judge had, we have held that such a consideration of credibility is not appropriate in deciding a motion to dismiss at · the close of the plaintiff's case. *See Swink v. Giffin, supra.* And, thirdly, Dory never testified as to why these transactions were sales and not loans.

■ ■ We turn then to our caselaw for a definition of what constitutes interest. In *Arkansas Sav. & Loan Ass'n v. Mack Trucks of Arkansas, Inc.,* 263 Ark. 264, 566 S.W.2d 128 (1978), we examined whether a fee deemed a "service charge" was actually interest. In doing so, we relied on our prior decision of *Sosebee v. Boswell,* 242 Ark. 396, 414 S.W.2d 380 (1967), in which we had previously set forth two principles for determining when additional charges are interest: (1) "any profit exacted by the lender must be treated as interest if it depends upon a contingency not within the control of the debtor[,]" and (2) "the moneylender cannot impose upon the borrower charges that in fact constitute the lender's overhead expenses or costs of doing business[.]" *Arkansas Sav. & Loan Ass'n,* 263 Ark. at 267-68, 566 S.W.2d at 130 (quoting *Sosebee v. Boswell, supra*). Additionally, this court has recognized the following definition of interest:

> The compensation which is paid by the borrower of money to the lender for its use, and generally, by a debtor to his creditor in recompense for his detention of the debt.

*Winston v. Personal Fin. Co. of Pine Bluff,* 220 Ark. 580, 585, 249 S.W.2d 315, 318 (1952) (quoting *Bouvier's Law Dictionary*).

■ Woodall testified that the $75 charge attached to each certificate of title was a fee paid to Dory for the use of the money.

This testimony plus the daily practice of exchanging money between the two men constituted substantial evidence that the $75 fee was a "cost of doing business" or "compensation paid to the lender for the use of the money." Accordingly, based on the evidence before the circuit judge when the motion to dismiss was made, we are convinced that there was substantial evidence the $75 charge was interest. Moreover, because the circuit judge dismissed Woodall's complaint before Dory presented his case, we are not privy to what Dory's testimony might have been regarding why these transactions were sales rather than loans.

On the surface, at least, the circuit judge concluded that Woodall and Dory were businessmen dealing at arm's length who had established a process for doing business and that only when matters began to go awry for Woodall did he raise the usury accusation. That may be, but this state's policy against usury as set out in our constitution is mandatory and provides no exception for knowledgeable businessmen. The standard is whether Woodall made a case supported by substantial evidence, when the proof is viewed in the light most favorable to him and that proof is given its highest probative value. We cannot say that he did not. Nor can we say that when the motion to dismiss was made, fair-minded people would all have reached the same conclusion against Woodall. That, of course, is the test for reversal. *See Morehart v. Dillard Dep't Stores, supra.* Accordingly, we reverse the judgment and remand the case for further proceedings, including a new trial if necessary.

We further reverse and remand the judgment in Dory's favor for the checks returned for insufficient funds in the amount of $102,230. At this stage, we cannot tell whether that amount includes any of the $75 transaction fees. That issue needs to be resolved on remand.

Reversed and remanded.

IMBER, J., not participating.

ARNOLD, C.J., dissents.

W.H. "DUB" ARNOLD, Chief Justice, dissenting. I agree with the majority that this Court has, indeed, held that consideration by the trial judge of the credibility of the parties is not appropriate in deciding a motion for directed verdict or to dismiss at the close of the plaintiff's case. *See Swink v. Giffin*, 333 Ark. 400, 970 S.W.2d 207 (1998). However, this limitation on the trial judge to be able to consider *everything*, including credibility, when the

trial is a *bench* trial, is disconcerting to me, not to mention unrealistic. When the judge is to determine whether or not the plaintiff has met his burden of proof in a bench trial, the trial judge should be able to assess all things, including credibility. I am bothered by this restriction on the trial court's consideration.

I therefore must respectfully dissent.