Cite as 2021 Ark. 233

# SUPREME COURT OF ARKANSAS
### No. CV-20-363

|  |  |
|---|---|
| | **Opinion Delivered:** December 16, 2021 |
| IN THE MATTER OF THE ESTATE OF JOHN HAROLD HAVERSTICK, DECEASED | |
| | APPEAL FROM THE WOODRUFF COUNTY CIRCUIT COURT [NO. 74PR-18-25-4] |
| JOHN HAVERSTICK AND JERRY HAVERSTICK | |
| | HONORABLE CHALK S. MITCHELL, JUDGE |
| APPELLANTS | |
| | AFFIRMED; COURT OF APPEALS OPINION VACATED. |
| V. | |
| FRANCES HAVERSTICK | |
| APPELLEE | |

**SHAWN A. WOMACK, Associate Justice**

Appellants John Haverstick Jr. and Jerry Haverstick appeal the circuit court's dismissal of their motion to set aside an order probating their father's will and appointing their stepmother, appellee Frances Haverstick, as personal representative of John Haverstick Sr.'s estate. In that same motion, John Jr. and Jerry contested the validity of the will and, in an amended motion, alleged that Frances unduly influenced John Sr. to dilute his sons' share of an annuity, payable upon his death. The circuit court found that the will was valid, and the court of appeals affirmed. *Haverstick v. Haverstick*, 2021 Ark. App. 260. Because sufficient evidence in the record supports the result reached by the circuit court, we affirm.

John Haverstick Sr. died in 2018. When he died, he and Frances Haverstick had been married for thirteen years. Two and a half years before John Sr. died, he amended his will. As amended, the will provided in part that:

4. I have an annuity or policy with Farm Bureau and I have made my estate the beneficiary of the proceeds from that policy. The value of that policy at the present time is $400,000.00.

5. I leave to both of my sons $10,000.00 a piece to be paid out of the proceeds from that policy upon my death.

6. The remainder of my property real, personal and mixed I give to my wife Frances should she survive me.

The annuity beneficiary documents remained unchanged and provided for a three-way split of the proceeds between Frances, John Jr. and Jerry.

After John Sr.'s death, Frances petitioned to probate his will and appoint herself as executrix. The same day she filed the petition, the circuit court entered an order admitting the will to probate and appointing Frances as executrix. Just under two months after the circuit court entered the order, John Jr. and Jerry filed a motion to set aside the order probating the will and appointing Frances as the executrix. In doing so, they contested the validity of the will and later alleged that Frances unduly influenced John Sr. to change the distribution of his annuity. In her response, Frances asked the circuit court to dismiss John Jr. and Jerry's motion.

The circuit court scheduled a hearing where it heard testimony concerning, *inter alia*, the relationships between the parties, the formation of the will, and the mental and physical condition of John Sr. At the conclusion of the hearing, the circuit court found that the will was valid and that there was neither a confidential relationship nor undue influence. John Jr. and Jerry timely appealed the circuit court's order to the court of appeals, arguing that the circuit

2

court did not have jurisdiction and that it improperly granted Frances's motion to dismiss their motion to set aside. The court of appeals affirmed the circuit court on both points, and John Jr. and Jerry timely filed a petition for review, which this court granted. When we grant a petition for review, we consider the appeal as though it had originally been filed with this court. *Davis Nursing Ass'n v. Neal*, 2019 Ark. 91, at 4, 570 S.W.3d 457, 460.

Appellants raise two arguments before this court. First, the circuit court did not have jurisdiction to probate the will or appoint an executrix because John Jr. and Jerry did not receive notice of the petition. Second, the circuit court erred when it found that the will was valid and not a product of undue influence. Specifically, John Jr. and Jerry claim that the circuit court erroneously placed the burden on them to prove undue influence. As a covered probate order, this court has jurisdiction to hear this appeal. Ark. R. App. P. –Civ. 2(a)(12).

A.

Appellants contend that a circuit court does not have jurisdiction to probate a will and appoint an executor if the petitioner fails to give notice of the hearing to other heirs or devisees. They rely on Ark. Code Ann. § 28-40-101(c) (Repl. 2012), which provides, in part, that "[n]o notice shall be jurisdictional except as provided in §§ 28-40-110 and 28-53-103." Specifically, appellants claim a failure to comply with § 28-40-110, which requires a hearing "[i]f the petition for probate or for the appointment of a general personal representative is opposed, or if a demand for notice has been filed." *Id.* § 28-40-110(a). If a hearing is required, the petitioner must provide notice to each heir and devisee whose name and address is included in the petition. *Id*. § 28-40-110(b).

3

Nothing in the record indicates that the circuit court held a hearing on Frances's petition, and appellants argue that they were entitled to one. Therefore, according to the appellants, the failure to hold a hearing and, relatedly, to provide notice was contrary to the requirements of § 28-40-110. This failure, they claim, deprives the court of jurisdiction to consider the petition under § 28-40-101(c). When the issue of jurisdiction requires statutory interpretation, our review is de novo. *Ark. Dep't of Fin. & Admin. v. Naturalis Health, LLC*, 2018 Ark. 224, at 7, 549 S.W.3d 901, 906.

As noted, a hearing is required only if someone opposes a petition for probate or for appointment of an executor. *Id.* § 28-40-110(a).

John Sr. died on May 2, 2018. On May 21, 2018, Frances filed her petition to probate his will and appoint herself as executrix. There is no evidence in the record that, during the intervening nineteen days, John Jr. or Jerry opposed the probating of the will or appointment of Frances as executrix for the estate. Although the brothers were unaware of the amount due to them, both were aware of the annuity and the will, and they could have raised any concerns about it to Frances in the time between their father's death and Frances's filing of her petition.

Until Frances filed her petition, John Jr. and Jerry did not take affirmative action to address the fate of their father's estate. Not only did they not confront Frances with their concerns about it, but also, the record does not show they inquired about it at all. Accordingly, we cannot say that they sufficiently opposed the probating of his will or the appointment of Frances as executrix, as the statute contemplates for the purpose of requiring a hearing.

Because a hearing on a petition to probate a will and appoint an executor is only required if the petition is opposed or if there is a demand for notice, the circuit court was not required

4

to have a hearing before ruling on the petition. Ark. Code Ann. § 28-40-110(a). Despite their status as heirs and devisees, John Jr. and Jerry were not entitled to a hearing because the requirements for a hearing had not been met under the statute, and therefore, the circuit court had jurisdiction. *Id.* § 28-40-110(b).

B.

John Jr. and Jerry also argue that the circuit court erroneously concluded that the will was valid. Specifically, the brothers claim that the circuit court erred when it failed to find that Frances and John Sr. had a confidential relationship and denied them relief at the close of their case. In their view, this improperly shifted the burden of proving undue influence to them. This court reviews probate matters de novo, but we will reverse the circuit court only if it abused its discretion or was clearly erroneous in coming to its conclusion. *Seymour v. Biehslich*, 371 Ark. 359, 361, 266 S.W.3d 722, 725 (2007). We are free in a de novo review to reach a different result required by the law. *Whaley v. Beckham*, 2016 Ark. 196, at 3–4, 492 S.W.3d 65, 67.

Frances's response to John Jr. and Jerry's motion to set aside the petition was formatted as an answer and culminated in her asking the circuit court to dismiss their motion. At the hearing, the brothers argued that Frances unduly influenced their father to change his will. After they presented their testimony—which included testimony by Frances and the attorney who drafted the will—Frances's counsel informed the circuit court that he had no additional evidence to present because any further testimony would simply be duplicative of the testimony that the brothers presented. The circuit court then entered an order finding that there was neither a confidential relationship nor undue influence and that the will was therefore valid.

Undue influence "is not the influence [that] springs from natural affection or kind offices"; it is the result of "fear, coercion, or any other cause that deprives the testator of his free agency in the disposition of his property, and it must be specially directed toward the object of procuring a will in favor of particular parties." *Rose v. Dunn*, 284 Ark. 42, 45, 679 S.W.2d 180, 182 (1984) (citing *McCulloch v. Campbell*, 49 Ark. 367, 55 S.W. 590 (1887)).

When a confidential relationship exists between a testator and a beneficiary, a presumption of undue influence arises, and the beneficiary bears the burden of rebutting the presumption. *Union Nat. Bank v. Leigh*, 256 Ark. 531, 532, 509 S.W.2d 539, 540 (1974). A marriage creates a confidential relationship, as does holding power of attorney over another. *Dent v. Wright*, 322 Ark. 256, 261, 909 S.W.2d 302, 304 (1995); *Dunn v. Dunn*, 255 Ark. 764, 766, 503 S.W.2d 168, 170 (1973). Here, we have both. On appeal, Frances concedes that there is a confidential relationship, recognizing that she and John Sr. had been married for thirteen years. She also held power of attorney for him. These facts alone are sufficient to establish a confidential relationship, giving rise to a presumption of undue influence, and the circuit court clearly erred when it failed to make such finding. *See id.*

At this point, the burden shifted to Frances to rebut the presumption of undue influence. *Union Nat. Bank*, 256 Ark. at 532, 509 S.W.2d at 540. Even though Frances did not present her own case to rebut this presumption, her attorney informed the court that to do so would be futile, as she would mimic the testimony that the brothers elicited during their case. Thus, the circuit court had heard all necessary testimony to make a ruling on undue influence. Although the circuit court did not overtly state that it required Frances to rebut the presumption, our de

6

novo review of the evidence clearly supports its conclusion that there was no undue influence. *See Whaley*, 2016 Ark. 196, at 3–4, 492 S.W.3d at 67. During the presentation of the brothers' case, Frances's one would-be witness—the attorney who drafted the will—testified that John Sr. met with him alone, without Frances present, and discussed the nature and extent of his property and to whom he wished for it to go. The drafting attorney would have presented this same testimony to rebut the presumption of undue influence had Frances presented her case.

Relatedly, neither John Jr. nor Jerry offered any evidence to show that their father lacked capacity when he signed the will. Their testimony focused on his poor physical condition at the time he amended the will, which is inapposite when considering his mental capacity as a testator. *Pyle v. Sayers*, 72 Ark. App. 207, 213, 34 S.W.3d 786, 789 (2000). Additionally, Frances testified that it was John Sr.'s idea to change his will, citing John Jr. and Jerry's lack of contact with him. The testimony of both Frances and the attorney who drafted the will sufficiently rebutted any presumption of undue influence.

Under our de novo review, we find that the evidence supports the circuit court's conclusion that there was no undue influence, even though there was a confidential relationship. The testimony presented rebutted the presumption of undue influence, making it unnecessary for Frances to put on repetitive testimony during her case. At that point, she simply rested, inviting the court to make a ruling on the merits, which it did.

Affirmed; court of appeals opinion vacated.

KEMP, C.J., and BAKER, J., concur.

WEBB, J., dissents without opinion.

7

**KAREN R. BAKER, Justice, concurring**. This is an appeal of a probate order that stems from litigation of the estate of John Haverstick Sr. and a dispute between his surviving family members. *See* Ark. R. App. P.–Civ. 2(12) (2020). Appellants are John Sr.'s children, brothers John Haverstick Jr. and Jerry Haverstick, and appellee is John Sr.'s surviving widow, Frances Haverstick.

The relevant facts are these. John Sr. died testate on May 2, 2018. At the time of John Sr.'s death, he owned an annuity with Farm Bureau Insurance with an approximate value of $400,000. John Sr. acquired the annuity in 1992 with his Farm Bureau agent, Bobby Bowen. John Sr. changed the terms of the annuity in 2000, 2004, and 2005. At the time of John Sr.'s death, John Jr., Jerry, and Frances were each to receive an equal one-third of the annuity, pursuant to the policy's beneficiary designation.

On October 20, 2015, John Sr. went to his attorney Thomas "Bay" Fitzhugh to change his will. In altering his will, John Sr. incorporated the annuity, which had previously not been included in his will. The revised will provided in pertinent part:

> I have an annuity or policy with Farm Bureau and I have made my estate the beneficiary of the proceeds from [the] annuity. I leave both my sons $10,000.00 a piece to be paid out of the proceeds from that policy upon my death. The remainder of my real, personal and mixed I give to my wife Frances should she survive me.

John Jr. and Jerry were not aware of the 2015 revised will until after John Sr.'s death. The alleged conflict between the will and the annuity are the crux of the underlying probate litigation.

On May 21, 2018, on behalf of Frances, Fitzhugh filed a petition to probate the will and appoint Frances as personal representative. Fitzhugh also filed an order probating the will and

appointing Frances as personal representative. On May 29, Fitzhugh sent John Jr. and Jerry letters informing them that John Sr.'s will had been admitted to probate and that Frances was the personal representative. On July 5, John Jr. and Jerry filed a motion to set aside the order probating the will and appointing Frances as personal representative and contest of will and later filed an amended motion to set aside the order. John Jr. and Jerry asserted that Frances had exercised undue influence, engaged in a game of secrecy and deception with John Sr., and isolated John Sr. from his family to create a financial windfall for herself.

On November 8, 2019, the circuit court conducted a hearing on the motions. John Jr. and Jerry presented the following testimony. First, Frances testified that at the time of his death, she and John Sr. had been together thirty-eight years during which they lived together for twenty-four years and were married for thirteen years. Frances testified that John Sr. was diagnosed with Parkinson's in 2013 and had also been diagnosed with chronic obstructive pulmonary disease (COPD), congestive heart failure, and chronic respiratory failure. Although the death certificate indicated dementia as a cause of John Sr.'s death, Frances explained that her husband had never been diagnosed with dementia, did not take medication for dementia, and never demonstrated symptoms of dementia, except toward the very end of his life in 2017. Frances testified that John Sr. did not suffer from end-stage dementia, and up to his death, John Sr. knew everyone and could carry on a conversation. Frances further testified that she is a licensed practical nurse and that she resigned from her job in May 2015 to stay home and take care of John Sr. Frances also testified that she took care of John Sr.'s bathing and cleaning and cooked his meals.

With regard to the will, Frances testified that John Sr. frequently asked her to make phone calls for him, and in 2015, John Sr. asked her to call Fitzhugh because he wanted to

change his will. Frances stated that John Sr. complained that his sons never came to see him, and he wanted to change his will. Frances testified that she explained to her husband that John Jr. and Jerry were busy, working long hours and could not visit him, but John Sr. insisted on changing his will. Frances testified that she made the appointment with Fitzhugh, and John Sr. drove them to the appointment. He went into the office and closed the door while she sat in the lobby for about thirty minutes and chatted with Patty, Fitzhugh's secretary. Frances testified that when Fitzhugh and John Sr. emerged from Fitzhugh's office, Fitzhugh asked Patty to find Bowen's phone number. Frances testified that Fitzhugh called Bowen while she and John Sr. were still there, but she did not hear the phone conversation and could not say whom Fitzhugh was speaking to during that phone call. Frances further testified that a few days after the will was revised, Patty, who "must have typed [the will] up," called the Haversticks and told them that John Sr. needed to come back and sign the will. Frances testified that she sat in the truck while her husband went inside and signed the will. Frances identified her husband's signature on the will and explained that his signature had changed after his Parkinson's diagnosis.

Second, Fitzhugh testified that in 2015, Frances contacted him to schedule an appointment for John Sr. Fitzhugh testified that Frances and John Sr. came to the office lobby, but only John Sr. came into Fitzhugh's office and discussed changes to his will; Frances remained in the lobby. Fitzhugh testified that John Sr. understood the extent and nature of his property and further testified "under his sworn oath" that he knew John Sr. "absolutely . . . wanted to revoke a specific will that in that will, and he said he wanted to make a change." Fitzhugh testified that the will was typed and signed on the day of the meeting and that he and his secretary, Patty, signed as witnesses. Fitzhugh further testified that he did not remember calling

10

Bowen on the day John Sr.'s will was changed. Fitzhugh testified that Patty typed the will when they were finished and that it was signed that day, though he recognized that there "is an issue about whether or not he signed it on that day or another day," Fitzhugh testified that he cannot type and occasionally has bank employees type deeds for him, but that there was no doubt in his mind that Patty "typed it up after my visit with John." Finally, Fitzhugh testified that "pretty soon" after John Sr.'s death, Frances contacted him for the probate, explaining, "[T]here was an issue because I subsequently found out at some point that- and I had told John when he was in the office he needed to change the designation of the beneficiary so there's not a conflict. I remember distinctly telling him that. But it turns out he didn't . . . I know. But I don't know anything about why he didn't. I don't know what was going on." Fitzhugh further explained that Frances came to speak with him regarding the conflict between the beneficiary-designation form and the 2015 will, and stated, "I think she was upset that there was an issue about whether this will would control the disposition of the annuity."

Third, Sherry McGuen, a former Woodruff County probate clerk who worked in the circuit clerk's office when the will was revised, testified that after John Sr. died, Fitzhugh came to the clerk's office and requested a copy of John Sr.'s case file. McGuen testified that Fitzhugh explained that he did not have a copy of the file, and McGuen responded that when Fitzhugh had originally brought the file in to be filed, the clerk's office had made a copy of the file and returned it to Fitzhugh. McGuen testified that Fitzhugh responded that "we didn't type this up in my office because my secretary has been out. Frances typed it up for me, and I don't have a copy of it."

11

Fourth, Jerry testified that he and John Sr. had a good relationship and that John Sr. had helped him out financially over the years. He testified that John Sr. did not like to use the phone and had Frances make phone calls for him. Jerry testified that he did not see John Sr. much because Jerry was helping care for both his mother, who had been in hospice care, and his wife, who died after a long illness in 2015.

Fifth, John Jr. testified that he lived a few blocks from John Sr. and could see his father's home from his home. He also testified that John Sr. did not like speaking on the phone, but he kept in contact with him. John Jr. testified he never had any reason to suspect John Sr. was upset with him. John Jr. testified that his communication with John Sr. was "sporadic," and at times he would communicate three or four times a week with his dad and at other times they would go weeks or months without seeing each other. John Jr. testified that Frances took good care of John Sr.

Finally, Farm Bureau agent Bobby Bowen testified that he had known John Sr. as a good friend since the 1960s and that John Sr. was a client. Bowen testified that over the years, John Sr. made changes to the beneficiaries and their respective shares in the annuity. Bowen further testified that he did not recall receiving a phone call in 2015 regarding the annuity and was not aware of changes to the distribution until Frances came into his office after John Sr.'s death. Bowen testified that he gave her the claim form, but she refused to sign it, and afterward, Bowen called John Jr. and Jerry.

At the close of John Jr. and Jerry's case, Frances moved to dismiss, asserting that John Jr. and Jerry had failed to present evidence to support John Sr.'s lack of testamentary capacity. John Jr. and Jerry objected and stated that they had sufficiently pled undue influence, that the motion

to dismiss should not be granted, and that Frances could proceed with her case. Frances responded that she could call her sole witness, Fitzhugh, back to the stand, but the testimony she intended to introduce was already in the record. The circuit court orally ruled from the bench, finding that John Jr. and Jerry had failed to submit evidence to support setting aside the order probating the will and appointing a personal representative. The circuit court also orally ruled there had been no undue influence on John Sr. and there was not a confidential relationship between Frances and John Sr.

On December 2, 2019, the circuit court entered its order granting Frances's motion to dismiss. The circuit court found that John Jr. and Jerry failed to present evidence to show that Frances had unduly influenced John Sr. The circuit court also found that, testimony from Fitzhugh established that John Sr. possessed full knowledge of the nature and extent of his property and that John Jr. and Jerry failed to introduce evidence to the contrary. The circuit court did not make a written ruling regarding whether a confidential relationship had been demonstrated.

John Jr. and Jerry appealed to the court of appeals, which affirmed the circuit court's order. *Haverstick v. Haverstick*, 2021 Ark. App. 260. On July 26, 2021, John Jr. and Jerry filed a petition for review with this court, which the court granted on September 23, 2021. When we grant a petition for review, we treat the appeal as if it had been filed in this court originally. *Gildehaus v. Ark. Alcoholic Beverage Control Bd.*, 2016 Ark. 414, 503 S.W.3d 789. On appeal, John Jr. and Jerry present two issues: (1) the circuit court did not have jurisdiction over this matter because John Jr. and Jerry did not receive notice of a hearing on the petition to probate the will and appoint a personal representative; and (2) the circuit court erred in granting Frances's

13

motion to dismiss John Jr. and Jerry's motion to set aside the order probating the will and appointing Frances as personal representative and contest of will.

## II. *Standard of Review*

This court reviews probate proceedings de novo and will not reverse the circuit court's decision unless it is clearly erroneous. *West v. Williams*, 355 Ark. 148, 133 S.W.3d 388 (2003). A finding is clearly erroneous when, although there is evidence to support it, the appellate court, upon review of all the evidence, is left with a definite and firm conviction that an error has occurred. *Ligon v. Stewart*, 396 Ark. 380, 255 S.W.3d 435 (2007). In a de novo review, this court's determinations are based on undisputed facts in the record. *ConAgra, Inc. v. Tyson Foods, Inc.*, 342 Ark. 672, 677, 30 S.W.3d 725, 728–29 (2000); *Ferguson v. Green*, 266 Ark. 556, 563–64, 587 S.W.2d 18, 23 (1979). "In conducting our review, we give due regard to the opportunity and superior position of the trial judge to determine the credibility of the witnesses. . . . [W]e will not overturn the probate court's factual determinations unless they are clearly erroneous, we are free in a de novo review to reach a different result required by the law." *Whaley v. Beckham*, 2016 Ark. 196, at 3–4, 492 S.W.3d 65, 67 (internal citations omitted). Finally, in reviewing issues of statutory interpretation, we first construe a statute just as it reads, giving words their plain and ordinarily accepted meaning. *Wal-Mart Stores, Inc. v. D.A.N. Joint Venture III, L.P.*, 347 Ark. 489, 288 S.W.3d 627 (2008). When the language is plain and unambiguous, the court does not resort to rules of statutory construction. *Id.* The word "shall" in a statute means that the legislature intended mandatory compliance with the statute unless that interpretation would

14

lead to an absurdity. *Benca v. Martin*, 2016 Ark. 359, 500 S.W.3d 742; *Ark. State Highway Comm'n v. Mabry*, 229 Ark. 261, 315 S.W.2d 900 (1958).

III. *Points on Appeal*

A. Notice and Jurisdiction

For their first point on appeal, John Jr. and Jerry argue that the circuit court did not have jurisdiction because they did not receive notice of a hearing on the petition to probate the will and appoint a personal representative. Frances responds by arguing that John Jr. and Jerry failed to preserve the issue for appeal.

It is the appellant's burden to obtain a ruling to preserve an issue for appeal. *Tillman v. Raytheon Co.*, 2013 Ark. 474, 430 S.W.3d 698. Failure to obtain a ruling precludes our review. *Id*. Here, in their motion and amended motion to set aside the order probating the will and appointing a personal representative to the circuit court, John Jr. and Jerry asserted that that they did not receive notice of a hearing as required under Ark. Code Ann. § 28-40-110. Also at the hearing, John Jr. and Jerry argued that they were not provided notice pursuant to the Probate Code. Accordingly, the record shows that John Jr. and Jerry obtained a ruling on the issue of notice, and it is preserved for appeal.

Regarding the merits of their first point on appeal, John Jr. and Jerry argue that the circuit court lacked jurisdiction because they did not receive notice of a hearing as required by Ark. Code Ann. § 28-40-110 (Repl. 2012). Frances responds that John Jr. and Jerry were not entitled to notice as they did not file a demand for notice pursuant to Ark. Code Ann. § 28-40-108. I agree with Frances's argument.

15

Three statutes are at issue. First, Arkansas Code Annotated § 28-40-108 states:

> (a)(1) If an interested person desires to be notified before a will is admitted to probate or before a general personal representative is appointed, he or she may file with the clerk a demand for notice.

Second, Arkansas Code Annotated § 28-40-109 states:

> Upon filing the petition for probate or for the appointment of a general personal representative, if no demand for notice has been filed as provided in § 28-40-108, and if such petition is not opposed by an interested person, the court in its discretion may hear it immediately or at such time and place as it may direct without requiring notice.

Third, Arkansas Code Annotated § 28-40-110(a) states:

> If the petition for probate or for the appointment of a general personal representative is opposed, or if a demand for notice has been filed under the provisions of § 28-40-108, the court shall, and in all other cases the court may, fix a time and place for a hearing on the petition.

Here, considering our rules of interpretation and giving words their plain and ordinarily accepted meaning, Ark. Code Ann. § 28-40-108 provides that if an interested party desires to be notified before a will is admitted to probate, then a demand for notice must be filed with the clerk. Further, under the plain language of Ark. Code Ann. §§ 28-40-109 and 28-40-110, failure to oppose a petition or file a demand for notice means the circuit court may hear the matter immediately without requiring notice.

Here, John Jr. and Jerry did not file a demand for notice pursuant to Ark. Code Ann. § 28-40-108. John Jr. and Jerry argue that Frances should have known that John Jr. and Jerry would oppose the petition. However, the plain language of Ark. Code Ann. § 28-40-110 considers the petition only at the time of filing. When Frances filed the petition, no opposition and no demand for notice had been filed with the circuit court. As a result, the circuit court could hear

16

the petition immediately and without notice. Accordingly, the circuit court had jurisdiction to admit the petition probating the will and appointing Frances as personal representative. Therefore, I would affirm the circuit court's ruling on this point.

## B. Motion to Dismiss

For their second point on appeal, John Jr. and Jerry argue that the circuit court erred when it granted Frances's motion to dismiss. Specifically, John Jr. and Jerry argue that (1) the circuit court improperly made credibility determinations; and (2) the circuit court should have determined that Frances and John Sr. had a confidential relationship and that a presumption of undue influence arose from that confidential relationship that Frances had the burden of rebutting. Frances responds by conceding that there was a confidential relationship between her and John Sr.; she contends that the record demonstrates that the presumption of undue influence was rebutted. Finally, she responds that the circuit court considered the case on the merits because she had nothing further to present when she moved to dismiss, and she urges us to affirm.

### 1. *Credibility assessment requires a new trial*

First, John Jr. and Jerry argue that the circuit court erred because it assessed the witnesses' credibility evaluating the motions and making its findings. Specifically, John Jr. and Jerry contend that "given those determinations and the resulting failure to find substantial evidence of a confidential relationship that would have shifted the burden to Frances and allowed the case to go forward, this Court should reverse and remand for a new trial." Relying on *Montigue v. Jones*, 2019 Ark App. 237, 576 S.W.3d 46, and *Rymor Builders, Inc. v. Tanglewood Plumbing Co.*, 100 Ark. App. 141, 265 S.W.3d 151 (2007), they assert that the circuit court erred in assessing

17

the credibility of evidence while considering Frances's motion to dismiss. *Montigue* and *Rymor Builders* both involved bench trials. In *Rymor Builders*, the court of appeals explained that "the court must decide 'whether, if it were a jury trial, the evidence would be sufficient to present to the jury.' *Woodall v. Chuck Dory Auto Sales, Inc.*, 347 Ark. 260, 264, 61 S.W.3d 835, 838 (2001). If the non-moving party has made a prima facie case on its claim or counter-claim, then the issue must be resolved by the finder of fact. *Swink v. Giffin*, 333 Ark. 400, 402, 970 S.W.2d 207, 208 (1998). In evaluating whether the evidence is substantial enough to make a question for the fact-finder, however, the circuit court may not assess the witnesses' credibility. *First United Bank v. Phase II*, 347 Ark. 879, 902, 69 S.W.3d 33, 49 (2002); *Swink*, 333 Ark. at 403, 970 S.W.2d at 209." *Rymor Builders, Inc.*, 100 Ark. App. at 145, 265 S.W.3d at 153.

Relying on these cases, John Jr. and Jerry contend that the circuit court erred as it considered credibility and urge this court to reverse and remand the matter for a "new trial." However, John Jr. and Jerry have misconstrued these cases, and their argument is misplaced. Here, a bench trial has not occurred.  Instead, this appeal stems from the circuit court's intermediate order from a motion hearing during which the circuit court ruled on the parties' motions. The probate matter may continue in the circuit court and a "new trial" would be premature. Accordingly, *Montigue* and *Rymor Builders* are not on point, and I am not persuaded that the circuit court applied the wrong standard in its evaluation of the motion at issue.

### 2. Undue influence

I now turn to John Jr. and Jerry's second argument within this point on appeal. John Jr. and Jerry contend that the circuit court erroneously failed to find that Frances and John Sr. had

a confidential relationship and that the circuit court therefore impermissibly shifted the burden of proving undue influence to John, Jr. and Jerry rather than Frances.

With regard to will contests, we have explained our standard: "It has long been the law in Arkansas that a party challenging the validity of a will must typically prove by a preponderance of the evidence that the testator lacked the requisite mental capacity or that the testator was the victim of undue influence when the will was executed. *See Greenwood v. Wilson*, 267 Ark. 68, 588 S.W.2d 701 (1979); *Sullivant v. Sullivant*, 236 Ark. 95, 364 S.W.2d 665 (1963); *Orr v. Love*, 225 Ark. 505, 283 S.W.2d 667 (1955)." *Pyle v. Sayers*, 344 Ark. 354, 359–60, 39 S.W.3d 774, 778 (2001). Further, we have held that where a confidential relationship exists between a donor or grantor and donee or grantee, then that donee or grantee must produce evidence to show that the instruments were freely and voluntarily executed. *See Dunn v. Dunn*, 255 Ark. 764, 765–66, 503 S.W.2d 168, 169–70 (1973).

Further, specifically, a relationship between a husband and wife is a confidential relationship, which, when coupled with other facts, can trigger a presumption of undue influence. *See, e.g., Dunn v. Dunn*, 255 Ark. 764, 765–68, 503 S.W.2d 168, 169–71 (1973). When a confidential relationship is demonstrated between a testator and beneficiary, a presumption of undue influence occurs and the beneficiary must overcome the rebuttable presumption of undue influence. *See e.g., Orr supra*; *Union Nat. Bank v. Leigh*, 256 Ark. 531, 532, 509 S.W.2d 539, 540 (1974).

With these standards in mind, I turn to the case before the court. In denying and dismissing the motion to set aside the order, the circuit court found in pertinent part:

19

[John Jr. and Jerry] failed to provide evidence that the Personal Representative of the Estate exercised undue influence on the Testator such that the Testator could not exercise free will at the time of the execution of said Will; that in any event, no such undue influence affected the Testator in his execution of said Will, who did so freely and without restraint.

That the Personal Representative of the Estate did not procure the Will, as no evidence whatsoever was introduced tending to prove that said Personal Representative created said Will or that she instructed the attorney who prepared such Will as to its contents.

That based upon the testimony of Bay Fitzhugh, the attorney who prepared said Will and witnessed it, the Testator possessed full knowledge of the nature and extent of his property and of his desires regarding disposition of said property; that [John Jr. and Jerry] introduced no contrary evidence whatsoever.

That no evidence was introduced by [John Jr. and Jerry] to the effect that Frances Haverstick, Personal Representative herein, "engaged in a game of secrecy and deception with her husband" or that she "kept him isolated from his family."

The Court finds that none of the other allegations contained in said Amended Motion have been proved, by any standard of proof.

John Jr. and Jerry make a twofold argument alleging the circuit court erred in its order. First, John Jr. and Jerry contend that a "new trial" is warranted because the circuit court failed to find that there was a "confidential relationship" between John Sr. and Frances. Second, John Jr. and Jerry contend that because the circuit court found that there was no confidential relationship, the court erred when it failed to shift the burden to Frances to rebut the presumption and prove lack of undue influence. Instead, the circuit court erroneously placed the burden on John Jr. and Jerry to prove undue influence. John Jr. and Jerry urge us to reverse this matter on the basis of these errors.

Here, once a confidential relationship was established, Frances must rebut the presumption that there was no undue influence arising out of the confidential relationship.

20

However, despite this, the record demonstrates that rather than shifting the burden to Frances once the confidential relationship was established, the circuit court placed the burden on John Jr. and Jerry to demonstrate undue influence. These two findings—lack of confidential relationship and John Jr. and Jerry's failure to demonstrate undue influence—are erroneous. Nevertheless, based on the record before us and our standard of review, I would affirm on this point for the reasons that follow.

It is undisputed that John Sr. and Frances were in a confidential relationship. Further, considering our de novo review of the record, the presumption of undue influence was rebutted. Frances and John Sr. had been together for thirty-eight years and married for thirteen. It is undisputed that Frances was John Sr's caretaker. It is also undisputed that John Sr. did not like to talk on the telephone and often had Frances make his calls. John Sr. drove himself and Frances to Fitzhugh's office to revise his will. Fitzhugh and Frances testified that John Sr. entered Fitzhugh's office by himself while Frances remained in the lobby. The parties presented conflicting testimony regarding when John Sr. signed the will, but it was undisputed that John Sr. signed his will himself. Further, McGuen testified that Fitzhugh needed to see John Sr.'s probate file because Frances typed the will. However, Fitzhugh testified that he was certain that his secretary, Patty, had typed the will. Fitzhugh testified that John Sr. clearly understood the extent and nature of his property and that the will was prepared based on exactly what John Sr. wanted, and there was no evidence presented to dispute this. Further, the record does not show that John Sr. felt any fear or coercion to alter his will or that John Sr. was isolated from his family. John Jr. lived two blocks from John Sr. and testified that his contact with his father was

21

sporadic and that they could possibly go months without seeing each other. Accordingly, I would hold that the evidence in the record establishes that the presumption was rebutted.

Finally, I note that at the hearing, although John Jr. and Jerry urged the circuit court to shift the burden to Frances, the circuit court declined to do so, and Frances explained that despite shifting the burden, she did not have additional testimony beyond what had already been presented:

> So if [John Jr. and Jerry] . . . say shift the burden shifted back to me . I'll call [Fitzhugh] back to the stand and let him say the same thing.  I think it's already in the record that he did have testamentary capacity, and they didn't rebut that all of her evidence and requested the circuit court to rule.

Thus, the record supports Frances's assertion that she had no additional evidence to present after John Jr. and Jerry presented their witnesses. Finally, I note that despite the lack of finding a confidential relationship and shifting the burden to Frances,  the circuit court also found no undue influence:

> In any event, no such undue influence affected the Testator in his execution of said Will, who did so freely and without restraint[.]

Based on the record before us and our standard of review, I would affirm the circuit court's order.

KEMP, C.J., joins.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellants.

*The Law Offices of Watson and Watson, PLLC*, by: *Tim Watson, Sr.*, and *Tim Watson, Jr.*, for appellees.

22